**MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP**
(A Limited Liability Partnership Formed in Pennsylvania)
By:     Gerald J. Corcoran, Esquire
Cornerstone Commerce Center
1201 New Road, Suite 100
Linwood, NJ  08221
(609) 601-3010
*ATTORNEYS FOR DEFENDANT PHUSION PROJECTS, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| MICHAEL A. MUSTICA, | CIVIL ACTION |
| Plaintiff, | No._____ |
| v. | |
| PHUSION PROJECTS, LLC d/b/a DRINK FOUR BREWING CO., and JOHN DOES 1-10 (multiple, alternative and fictitious individuals and/or business entities), | **DEFENDANT'S** <br> **NOTICE OF REMOVAL** |
| Defendants. | |

TO THE CLERK OF THE COURT:

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant

Phusion Projects, LLC d/b/a Drink Four Brewing Co., by and through its attorneys, remove to

this Court the action described below:

1.     On March 14, 2011, Plaintiff Michael A. Mustica ("Plaintiff") filed a complaint in

the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-2667-11,

entitled *Michael A. Mustica v. Phusion Projects, LLC, et al.*  (A true and correct copy of the

complaint is attached hereto as Exhibit A).

2710883v1

2.      Defendant Phusion Projects, LLC d/b/a Drink Four Brewing Co ("Defendant") was personally served with Plaintiff's summons and complaint on April 13, 2011 from a process server. (A true and correct copy of the summons is attached hereto as Exhibit B).

3.      Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

4.      Pursuant to 28 U.S.C. § 1332(a), "The district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between – (1) Citizens of different States ...."

5.      According to Paragraph 215 (Count I ), paragraph 222 (Count II), paragraph 231 (Count III) Plaintiff "suffered bodily injury, resulting in pain and suffering, disability, injury to his heart, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, and loss of ability to earn money. All such damages and losses are either permanent or continuing in nature and the plaintiff will suffer losses indefinitely into the future." Defendant denies liability for any such damages, but from a reading of the Complaint, the amount in controversy as pled by Plaintiff exceeds the sum or value of $75,000, exclusive of interest and costs.

6.      Complete diversity of citizenship is present because Plaintiff and Defendant are citizens of different states. Plaintiff alleges in his complaint that he is a citizen of New Jersey and currently resides in Warren County, New Jersey. *See*, Exhibit A, Complaint ¶ 20.

7.      Defendant is a Limited Liability Company ( LLC ),organized and existing under the laws of the state of Delaware with its principal place of business located in Chicago, Illinois. No member of the LLC is citizen of New Jersey.

8.      All facts alleged herein pertaining to the citizenship of the parties are alleged to be true as of the time of the filing of the summons and complaint in state court and as of the time of the filing of this Notice of Removal.  Both elements of diversity jurisdiction are present. Therefore, this Court has jurisdiction under 28 U.S.C. § 1332.

9.      This Notice of Removal is timely filed.  Under 28 U.S.C. § 1446(b), the Notice of Removal is to be filed within thirty days of service of the initial pleading setting forth the claim. Defendant received the summons and complaint through personal service by a process server on April 13, 2011.  Therefore, removal is timely because Defendant was served less than thirty days before the date of removal.

10.     Defendant will cause notice of this removal to be filed with the Superior Court of New Jersey, Law Division, Atlantic County.  A copy of Defendant's Notice of Filing Notice of Removal to Federal Court is attached hereto as Exhibit C.


                         MONTGOMERY, MCCRACKEN,
                         WALKER & RHOADS, LLP


Dated:  April 21, 2011           By: s/ Gerald J. Corcoran
                             Gerald J. Corcoran

                             *Attorneys for Defendant Phusion Projects, LLC*


-3-

2710883v1

**MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP**
(A Limited Liability Partnership Formed in Pennsylvania)
By:    Gerald J. Corcoran, Esquire
Cornerstone Commerce Center
1201 New Road, Suite 100
Linwood, NJ  08221
(609) 601-3010
*ATTORNEYS FOR DEFENDANT PHUSION PROJECTS, LLC*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| MICHAEL A. MUSTICA,          : <br><br>         Plaintiff,     : <br><br>    : <br> v.                 : <br><br> PHUSION PROJECTS, LLC d/b/a DRINK    : <br> FOUR BREWING CO., and JOHN DOES 1-   : <br> 10 (multiple, alternative and fictitious     : <br> individuals and/or business entities),      : <br><br>         Defendants.    : <br>   : | CIVIL ACTION <br><br> No._____ <br><br><br><br> **CERTIFICATE OF SERVICE** |

I, Gerald J. Corcoran, hereby certify that on the date listed below **Defendant Phusion Projects, LLC's Notice of Removal** was filed with the Court via ECF.  I also caused a true and correct copy of the document to be served by e-mail and first class mail, upon the following:

Andrew J. D'Arcy, Esquire
D'Arcy Johnson Day, P.C.
3120 Fire Road, Suite 100
Egg Harbor Township, NJ 08234
*Attorneys for Plaintiff*

Dated:  April 21, 2011

s/ Gerald J. Corcoran
Gerald J. Corcoran

# EXHIBIT A

MAR. 21. 2011 11:18AM   DARCY JOHNSON DAY                    No. 8705   P. 8

RECEIVED and
FILED

MAR 1 4 2011

ATLANTIC COUNTY
LAW DIVISION

D'ARCY JOHNSON DAY, P.C.
3120 Fire Rd., Suite 100
Egg Harbor Twp NJ 08234
(609) 641-6200
Attorneys for Plaintiff

| | |
|---|---|
| MICHAEL A. MUSTICA,<br><br>Plaintiff,<br><br>v.<br><br>PHUSION PROJECTS, LLC d/b/a<br>DRINK FOUR BREWING CO., and<br>JOHN DOES 1-10 (multiple, alternative<br>and fictitious individuals and/or business<br>entities),<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>ATLANTIC COUNTY<br><br>DOCKET NO.:<br><br>CIVIL ACTION   L-2267-11<br><br>COMPLAINT |

Plaintiff Michael A. Mustica ("Plaintiff") through his undersigned counsel,

D'Arcy Johnson Day, P.C., asserts the following Complaint against Defendant Phusion Projects,

LLC d/b/a Drink Four Brewing Co. ("Phusion"), and John Does 1-10 (collectively,

"Defendants").

### INTRODUCTION

1.    Plaintiff brings this action against Phusion for Phusion's deceptive and

reckless actions related to the production, marketing, and selling of its popular alcoholic

beverage called Four Loko.

2.    Phusion's actions have caused an otherwise healthy 22-year old to suffer

from a heart condition after consuming Four Loko.

3.    Four Loko has been referred to as "blackout in a can" and "liquid cocaine"

and is popular with underage individuals and college-aged students (collectively, the "Target

Market") due to its potency, inexpensive cost, and vibrant packaging targeted at the younger

demographic.

4.     Upon information and belief, before being pulled from the market under threat of action by the United States Food and Drug Administration ("FDA"), one standard single serving can of the caffeinated version of Four Loko ("Original Four Loko") in New Jersey contained 23.5 ounces of liquid, was comprised of 12 percent alcohol, and had as much caffeine as contained in two energy drinks.

5.     Upon information and belief, each single serving can purchased in New Jersey contained the alcohol content equivalent of approximately six beers.

6.     Because of the dangers associated with the beverage, Original Four Loko has been banned or restricted by at least ten states, and at least ten colleges and universities either ban the product or severely punish students that possess it.

7.     Upon information and belief, the danger of Four Loko is so severe that it has been linked to at least nine deaths.

8.     The FDA has declared that caffeinated alcoholic beverages are "a public health concern."

9.     The FDA has warned Phusion: "It is FDA's view that the caffeine content of your beverage could result in central nervous system effects if a consumer drank one or more containers of your product. Therefore, FDA believes that the consumption of your product, 'Four Loko,' may result in adverse behavioral outcomes because the caffeine is likely to counteract some, but not all, of the adverse effects of alcohol."

10.    New York Senator Charles E. Schumer applauded the FDA warning as "the nail in the coffin of these dangerous and toxic drinks."

11.    Phusion, recognizing the danger its product posed, pulled the caffeinated version of Four Loko from the market and now markets a version without caffeine, guarana, and taurine.

-2-

12.    Indeed, Phusion's reckless actions regarding Four Loko are not its first experience with questionable products and marketing.

13.    In 2006, Phusion's original entry into the caffeinated alcoholic beverage market started with a product called "Four."

14.    Phusion initially marketed Four as containing "wormwood oil."

15.    Wormwood is the active ingredient in absinthe and is thought to have hallucinogenic effects.

16.    Phusion later removed wormwood oil from its products.

17.    Upon information and belief, after having to change its formula a second time, a black market remains for the caffeinated version of Four Loko – commanding many times the retail price.

18.    As a result of Phusion's failure to warn consumers about the harmful and potentially deadly effects of Four Loko's potent content, Plaintiff now has a heart condition at the age of 22 as a result of consuming Four Loko.

19.    Upon information and belief, Plaintiff is one of many individuals around the country who have suffered injury as a result of Phusion's actions and inaction.

## PARTIES

20.    Plaintiff is an individual who is a citizen of New Jersey and currently resides in Warren County, New Jersey.

21.    Phusion is a corporation organized and existing under the laws of the state of Delaware with its principal place of business located at 1658 Milwaukee Avenue, Suite 424, Chicago, IL 60647.

22.    Phusion does business as "Drink Four Brewing Company".

-3-

23.   Phusion is the manufacturer, distributor, marketer, promoter, and seller of the Four Loko beverage.

24.   Phusion regularly conducts business in New Jersey and in this judicial district by advertising and, through the distributors and retailers, delivers and sells its product to consumers.

25.   Plaintiff alleges, on information and belief, that at all times relevant herein, Phusion and its employees, subsidiaries, affiliates, and other related entities, were the agents, servants and employees of each other, and at all times relevant herein, each was acting within the purpose and scope of that agency and employment.

26.   Plaintiff further alleges, on information and belief, that at all times relevant herein, the distributors and retailers who delivered and sold Original Four Loko, the alcoholic beverage at issue, also were Phusion's agents, servants and employees, and at all times herein, each was acting within the purpose and scope of that agency and employment.

27.   Whenever reference in this Complaint is made to any act or omission of the Phusion, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Phusion committed, knew of, performed, authorized, ratified and/or directed that act or omission on behalf of Phusion while actively engaged in the scope of their duties.

28.   Defendants John Does 1-10 are fictitious names representing unknown individuals, businesses, or other entities whose actions and/or inactions caused damage to Plaintiff as alleged herein.

29.   All allegations herein are based on information and belief and/or are likely to have evidentiary support after reasonable opportunity for further investigation and discovery.

-4-

## JURISDICTION AND VENUE

30.   Jurisdiction and venue are proper in this Court as the Plaintiff resides in New Jersey and the cause of action arose in this County.

## FACTUAL BACKGROUND

### Phusion Overview

31.   Phusion was formed in 2005 by Chris Hunter, Jaisen Freeman, and Jeff Wright, three students at The Ohio State University.

32.   The three founders as of 2005 had little experience in producing beverages, alcoholic or otherwise.

33.   Upon information and belief, before committing their efforts to Phusion full time, Wright managed accounts for an industrial medical supply company, Freeman worked for a global bank firm, and Hunter had some experience working for a spirits maker.

34.   Upon information and belief, none of the three founders have any experience in the medical profession and knew or deliberately ignored the dangerous consequences of combining caffeine, guarana, and taurine with alcohol or the synergistic effect of the combination of these four ingredients.

35.   Today, Phusion produces, markets, and sells through retailers alcoholic beverages called Four Loko, Four MaXed, and Earthquake.

36.   Earthquake is marketed as a "non-caffeinated High Gravity Lager" and is not believed to have ever contained caffeine.

37.   Four Loko is sold in 23.5-ounce cans with either 6 or 12 percent alcohol by volume ("ABV"), depending on state regulations.

-5-

38.     Four Loko was introduced to the market in August of 2008 and today comes in eight flavors: Orange, Fruit Punch, Lemonade, Cranberry Lemonade, Uva (grape), Watermelon, Blue Raspberry and Lemon Lime

39.     Four MaXed is sold in 15-ounce cans and has 10 percent ABV.

40.     Four MaXed was introduced to the market in January of 2008 and comes in two flavors: Gold (citrus) and Grape.

41.     The "four" in Four Loko and Four MaXed refers to the original formula's four primary ingredients: alcohol, caffeine, taurine, and guarana.

42.     The three founders came up with the idea for a pre-mixed caffeinated alcoholic beverage after noticing that students were mixing alcohol and caffeine in bars.

43.     The combination of alcohol and energy drinks is very popular among youth and are regularly consumed by 31% of 12 to 17-year-olds and 34% of 18 to 24-year-olds according to a Fact Sheet published by the Centers for Disease Control and Prevention ("CDC").

44.     The CDC also reports that two leading brands of caffeinated alcoholic beverages experienced a 67-fold increase in sales between 2002 and 2008.

45.     Phusion has experienced tremendous financial growth in the past two years.

46.     It is estimated that Four Loko's top three flavors have sold an aggregate $97 million or more.

47.     Upon information and belief, the sales for Four Loko's top three flavors make them the ranked 3, 5, and 18 stocked products in the "progressive adult beverage" category according to Information Resources Inc.

48.     Upon information and belief, Phusion's sales have tripled in approximately the past year.

-6-

49.    Upon information and belief, Phusion is the fasting-growing beer and malt beverage company in the United States.

## Phusion's First Product, Promotional Tour, and Formula Change

50.    Before problems developed with the Four Loko product that is the subject of this Complaint, Phusion had previously made an attempt to enter the caffeinated alcoholic beverage market in 2006 with a product called Four.

51.    Phusion's early practices reveal deception and recklessness that was the precursor to Phusion's actions related to Four Loko.

52.    Phusion's first sales of Four took place in January 2006.

53.    While Four was similar to the original versions of Four Loko and Four MaXed in the respect that it was a flavored caffeinated alcoholic beverage, there was an additional ingredient not found in Phusion's current products called wormwood oil.

54.    Wormwood is an active ingredient in the alcohol absinthe.

55.    Absinthe is a popular alcoholic drink that originated in Europe, and is still sold there today.

56.    Absinthe is derived from wormwood, and contains the chemical thujone, which is thought to cause hallucinogenic effects.

57.    Absinthe has been the subject of controversy in the United States.

58.    Until 2007, absinthe was banned in the United States.

59.    In 2007, the Alcohol and Tobacco Tax and Trade Bureau (TTB) clarified that food or beverages were permitted to be sold in the United States if they were thujone-free.

60.    Phusion marketed Four as containing wormwood oil, which is associated with absinthe and hallucinogenic effects, even though the product did not contain any thujone.

61.     The ingredient in Four was "wormwood oil," which is different than wormwood.

62.     The inclusion of "wormwood oil" was designed to attract the Target Market who would be drawn to an "exotic ingredient" with a reputation for causing hallucinogenic effects.

63.     Phusion was aware of the dangers surrounding caffeinated alcoholic beverages as early as 2006 during the time it was promoting Four.

64.     Between February and March 2006, Phusion launched a promotional road trip throughout Ohio and the Midwest to generate interest in the Four product.

65.     As part of its plan to reach the Target Market, Phusion picked the largest collegiate sporting event to officially debut Four.

66.     Phusion launched Four during the NCAA 2006 Final Four Weekend in Indianapolis, Indiana.

67.     Following the Final Four Weekend, the road trip and product launch continued through June 2006 throughout the Midwest.

68.     Phusion's product launch was aimed at college campuses in Ohio, Indiana, and Illinois.

69.     Phusion purposely targeted college campuses and their surrounding areas as part of Phusion's overall plan to attract the Target Market.

70.     Phusion hosted launch parties at local bars and liquor stores near college campuses which involved tastings of the Four beverage.

71.     In December 2007, Phusion nearly went out of business.

72.     Around this same time, Phusion abandoned its original product Four, and launched a reformulated product called Four MaXed in January 2008.

-8-

73.  The initial version of Four MaXed contained wormwood oil.

74.  At the time, Phusion's website for the product, www.drinkfour.com, trumpeted Four MaXed as "big enough to get the job done right."

75.  Founder Hunter admitted at the time that there could be confusion between its caffeinated alcoholic beverages and non-alcoholic energy drinks stating, "[s]ome people, I guess, call them energy drinks, and maybe that's where the confusion is created."

76.  At some point between Four MaXed's entry into the market in August 2008 and today, Phusion removed wormwood oil from the product.

### Phusion Successfully Reaches the Target Market with Four Loko

77.  The subject of this Complaint, Four Loko, has existed in two forms.

78.  Before being pulled from the market in November 2010 by Phusion, the original version of Four Loko ("Original Four Loko") contained caffeine.

79.  The Plaintiff in this action consumed Original Four Loko.

80.  Subsequent to Phusion pulling Original Four Loko from the market, Phusion opted to reformulate the product so that Four Loko no longer contains caffeine, taurine and guarana.

81.  After being introduced to the market in August 2008, the Four Loko brand gained popularity around the United States, eventually becoming available in 47 states and in Europe.

82.  Four Loko is inexpensive compared to similar alcoholic products.

83.  A standard serving can of Four Loko typically sells for around $2.50 or $3.00.

84.  This low price point is appealing to the Target Market and others living on a tight budget.

85.    Four Loko contains and always has contained between 6 and 12 percent alcohol by volume depending on state regulations, and comes in flavors such as Orange, Fruit Punch, Lemonade, Cranberry Lemonade, Uva (grape), Watermelon, Blue Raspberry and Lemon Lime.

86.    These flavors appeal to underage drinkers and college students because they taste more like a soft drink than an alcoholic beverage.

87.    Four Loko, as sold in New Jersey, contains and always has contained 12 percent alcohol by volume.

88.    Standard beers usually contain between 4 and 5 percent alcohol by volume.

89.    Upon information and belief, Four Loko is sold and always has been sold in a 23.5-ounce can, which when consumed, can be as potent as drinking approximately six 12 ounce cans of standard beer.

90.    Original Four Loko contained at least 135 milligrams of caffeine in each single serving 23.5 ounce can.

91.    According to the Mayo Clinic, a 12-ounce soft drink contains approximately 35 milligrams of caffeine, and an 8.3 ounce energy drink contains approximately 76 milligrams of caffeine.

92.    Original Four Loko also contained guarana and taurine.

93.    Guarana contains high concentrations of caffeine and has been used as a stimulant and appetite suppressant.

94.    According to an article in Pediatrics, the official journal of the American Academy of Pediatrics, "[e]ach gram of guarana can contain 40 to 80 mg of caffeine, and it has a potentially longer half life because of interactions with other plant compounds. Manufacturers

-10-

are not required to list the caffeine content from these ingredients. Thus, the actual caffeine dose in a single serving may exceed that listed."

95.   The article, "Health Effects of Energy Drinks on Children, Adolescents, and Young Adults", reported that energy drinks containing ingredients such as guarana, taurine, and caffeine have been associated with serious adverse effects including tachycardia, cardiac dysrhythmias, seizures, heart failure and death.

96.   Persons with heart problems, high blood pressure, kidney disease, an overactive thyroid (hyperthyroidism) or an anxiety or nervous disorder have been discouraged from ingesting guarana.

97.   Taurine is an amino acid often added to energy drinks of which the effects of heavy or long-term use are largely unknown.

98.   While Phusion currently only produces and sells the reformulated Four Loko, there is a black-market for the remaining cases of Original Four Loko.

99.   For example, in January 2011, three individuals were arrested after trying to sell three cases of Four Loko for $335.

100.   Certain retailers still sell their remaining supplies of Original Four Loko.

### Phusion Ignores Repeated Warning Signs

101.   The danger of caffeinated alcoholic beverages has been known for quite some time and Phusion was aware, or should have been aware, of the danger long before it pulled its caffeinated alcoholic beverages from the market.

102.   Upon information and belief, in April 2006, Phusion recommended not drinking more than four cans of Four per day.

103. Phusion's recommendation that individuals not drink more than four cans of Four per day was an admission that Phusion understood the inherent danger of caffeinated alcoholic beverages.

104. In August 2007, a task force of state attorneys general wrote a letter to the federal Alcohol and Tobacco Tax and Trade Bureau (TTB) expressing concerns about caffeinated alcoholic beverages.

105. The letter warned that "[a]dding caffeine and other stimulants to alcohol may increase the risk to young consumers because those additives tend to reduce the perception of intoxication and make greater quantities of alcohol palatable."

106. In 2008, a group of state attorneys general began investigating companies that sold caffeinated alcoholic beverages on the grounds that the companies might be engaging in deceptive marketing, and the drinks could pose health risks by masking feelings of intoxication.

107. As a result, in December 2008, Anheuser-Busch InBev NV and MillerCoors LLC, agreed to remove caffeine from their caffeinated alcoholic beverages.

108. Upon information and belief, subsequent to Anheuser-Busch InBev NV and MillerCoors LLC, leaving the caffeinated alcoholic beverage market, Phusion saw increases in revenues and profits from increased market share.

109. In November 2009, the FDA notified certain makers of caffeinated alcoholic beverages, including Phusion, that the FDA was beginning to look into the safety of their beverages and requested information on the alleged safety of adding caffeine to their products.

110. At the time, Phusion maintained that "[a]lcohol and caffeine have been consumed together safely by adults of legal drinking age for years."

-12-

111. Founder Hunter has also claimed that "[c]affeine and alcohol being mixed is nothing new and novel."

112. At no time did Phusion inform the FDA that pre-mixed caffeinated alcoholic beverages were unsafe.

### Four Loko Controversies and Incidents

113. In 2010 and early 2011, amidst building popularity and revenues, a series of incidents took place around the country that called into question the safety of Original Four Loko.

114. One of the first reported incidents involving the effects of Original Four Loko took place at Ramapo College of New Jersey ("Ramapo") in Mahwah, New Jersey in September 2010.

115. At Ramapo, 17 students and 6 visitors required medical attention after a party where Original Four Loko was consumed.

116. As a result of this incident, Ramapo banned the drink from its campus.

117. One month later, in October 2010, nine underage students at Central Washington University ("CWU") in Ellensburg, Washington were hospitalized after drinking Original Four Loko.

118. Other incidents involving Original Four Loko and resulting bans have taken place at various schools, colleges, and universities. These include, but are not limited to, the following:

   a)  At Rider University ("Rider") in Trenton, New Jersey, four students were hospitalized after drinking Four Loko.

   b)  At St. Joseph's University in Philadelphia, Pennsylvania, a "handful" of students were sent to the hospital after drinking Four Loko.

c)  In New Jersey alone, Ramapo, Drew University, Rider, and Farleigh Dickson University have either banned or severely punish students caught with Four Loko.

d)  The State University of New Jersey, Rutgers University, has called on the federal government to ban caffeinated alcoholic beverages nationwide.

e)  Mahwah, New Jersey high school students faced complaints after being intoxicated from Four Loko.

f)  The University of Rhode Island, Mount St. Mary's University, Wentworth Institute of Technology, Boston University, and the University of Maryland have banned Four Loko from their campuses.

g)  Worcester State University in Worcester, Massachusetts stopped the sale of all energy drinks.

119.  Numerous incidents of hospitalization and several deaths have been reported as a result of individuals consuming Original Four Loko. These allegations include, but are not limited to, the following:

a)  In August 2010, a Long Island, New York 18-year-old female died in Florida of cardiac arrest after drinking four cans of Four Loko on top of a diet pill she had taken earlier in the day.

b)  On August 1, 2010, a Florida resident and his three sons were killed when an individual who had been drinking Four Loko struck their car.

c)  On October 20, 2010, a 19-year old Pennsylvania man suffered a heart attack from drinking Four Loko. After being admitted to Temple University Hospital, doctors described the man's symptoms as resembling an overdose of cocaine or speed.

d)  On November 5, 2010, a 21-year old female in Maryland died after drinking two cans of Four Loko and crashing her vehicle into a telephone pole. Her friends stated that after consuming Four Loko, "[s]he was not the same person," and "[s]he could not remember people's names  She was passed out within 30 minutes of having the alcoholic beverage."

e)  Florida's Department of Children and Families announced that it is investigating the misuse of Four Loko after seeing "about a dozen cases in recent months that in some way involved this particular beverage . . . [w]ith] Investigators [] seeing the beverage as a

-14-

precursor in domestic-violence cases, cases related to supervision, DUIs and even parents consuming the beverage with teens."

120.    Original Four Loko has also been banned or restricted in certain states.

These include, but are not limited to, the following:

a)    Utah: as early as October 2010, Utah's Department of Alcoholic Beverage Control determined that Four Loko would not be allowed for sale in the state.

b)    Pennsylvania: on November 1, 2010, the Pennsylvania Liquor Control Board sent letters to all state liquor stores urging the distributors to discontinue the sale of the drink.

c)    Michigan: on November 3, 2010, the Michigan Liquor Control Commission passed a ban on sales of caffeinated alcoholic beverages.

d)    Oklahoma: on November 3, 2010, the Oklahoma Alcoholic Beverage Laws Enforcement Commission placed a moratorium on Four Loko and other pre-mixed caffeinated alcoholic beverages which allowed retailers to sell their remaining stock before an outright ban effective December 3, 2010.

e)    Washington: on November 10, 2010, the Washington State Liquor Control Board voted to ban the sale of alcoholic energy drinks which went into effect on November 18, 2010.

f)    Massachusetts: on November 18, 2010, the Massachusetts Alcoholic Beverages Control Commission filed an emergency regulation prohibiting the sale of alcoholic beverages that contain caffeine as an added ingredient.

g)    New York: using the threat of banning Four Loko, the New York State Liquor Authority reached an agreement with Phusion to stop the sale and distribution of Four Loko as of November 19, 2010.

h)    Oregon: on November 20, 2010, the Oregon Liquor Commission held an emergency meeting and voted to ban Four Loko effective immediately.

i)    Kansas: on November 22, 2010, the Kansas Alcoholic Beverage Control announced that it had banned and was recalling caffeinated alcoholic beverages.

121.    Certain retailers, including Wegmans and Tops Markets, pulled Original

Four Loko from their shelves.

### Phusion Pulls Four Loko From the Market

122.    Facing mounting public criticism, Phusion sent a letter to college presidents on November 4, 2010, sharing information about its products and offering "financial support for alcohol education efforts on campus."

123.    Shortly thereafter, on November 14, 2010, following public criticism by then-New York Governor David Patterson, Phusion agreed to stop shipping Original Four Loko to New York State as of November 19, 2010.

124.    On November 16, 2010, under pressure from the FDA and state governments across the country, Phusion announced its plan to remove caffeine and other sources of stimulant from its caffeinated alcoholic beverages.

125.    Phusion released a statement stating that it planned to remove caffeine, guarana and taurine nationwide and that Phusion would only produce a non-caffeinated version of Four Loko.

126.    Phusion's three co-founders, Chris Hunter, Jeff Wright, and Jaisen Freeman stated: "We are taking this step after trying – unsuccessfully – to navigate a difficult and politically-charged regulatory environment at both the state and federal levels."

### FDA Completes Review and Issues Warning Letter

127.    On November 17, 2010, one day following Phusion's announcement to reformulate Four Loko, the FDA released the results of its scientific review into caffeinated alcoholic beverages.

128.    The FDA declared that "[t]hese beverages present a public health concern."

129.    The FDA stated that caffeine added to alcoholic beverages is an "unsafe food additive" and said that seizure of the products is possible under federal law.

-16-

130.   As part of the FDA's scientific review, the FDA stated that it "examined the published peer-reviewed literature on the co-consumption of caffeine and alcohol, consulted with experts in the fields of toxicology, neuropharmacology, emergency medicine, and epidemiology, and reviewed information provided by product manufacturers. FDA also performed its own independent laboratory analysis of these products."

131.   The FDA went on to note that "FDA does not find support for the claim that the addition of caffeine to these alcoholic beverages is 'generally recognized as safe,' which is the legal standard . . . . To the contrary, there is evidence that the combinations of caffeine and alcohol in these products pose a public health concern."

132.   The FDA further urged that the "peer-reviewed studies suggest that the consumption of beverages containing added caffeine and alcohol is associated with risky behaviors that may lead to hazardous and life-threatening situations."

133.   The FDA went on to warn Phusion: "It is FDA's view that the caffeine content of your beverage could result in central nervous system effects if a consumer drank one or more containers of your product. Therefore, FDA believes that the consumption of your product, 'Four Loko,' may result in adverse behavioral outcomes because the caffeine is likely to counteract some, but not all, of the adverse effects of alcohol."

134.   The FDA specifically cited various studies concerning the safety of caffeine in alcohol:

> FDA has the following specific concerns about the safety of caffeine when used in the presence of alcohol.
>
> • Reports in the scientific literature have described behavioral effects that may occur in young adults when energy drinks are consumed along with alcoholic beverages (O'Brien et al., 2008; Thombs et al., 2010; Miller, 2008).

-17-

• Studies suggest that the combined ingestion of caffeine and alcohol may lead to hazardous and life-threatening situations because caffeine counteracts some, but not all, of alcohol's adverse effects. In one study, a mixture of an energy drink and alcohol reduced subjects' subjective perception of intoxication but did not improve diminished motor coordination or slower visual reaction times using objective measures (Ferreira et al., 2006). In a dual-task model, subjects co-administered caffeine and alcohol reported reduced perception of intoxication but no reduction of alcohol-induced impairment of task accuracy (Marczinski and Fillmore, 2006).

• Because caffeine alters the perception of alcohol intoxication, the consumption of pre-mixed products containing added caffeine and alcohol may result in higher amounts of alcohol consumed per drinking occasion, a situation that is particularly dangerous for naive drinkers (Oteri et al., 2007).

<u>Medical Evidence</u>

135.  The combination of caffeine and alcohol in Original Four Loko can cause serious medical conditions, and lead to increased consumption of alcohol.

136.  One of the physiological dangers is the effect of caffeine and alcohol on a user's heart.

137.  The stimulant effect of caffeine combined with the depressant effect of alcohol can cause cardiac related problems.

138.  In particular, caffeine acts to raise the heart rate and blood pressure and can lead to heart palpitations.

139.  Consumption of caffeine with alcohol further increases the risk of heart rhythm problems.

140.  This danger is enhanced as a result of caffeine counteracting the depressive effects of alcohol and keeping the individual more alert.

141.  The perceived level of increased alertness has been found by researchers at the Boston University School of Public Health and the Center for Alcohol and Addiction

Studies at Brown University to have no effect on enhancing performance on a driving test or improving sustained attention or reaction times.

142.   The delayed feeling of drunkenness leads individuals to consume additional alcohol to obtain the same sensations as those found in previous encounters.

143.   Caffeine in effect tricks individuals into believing they can keep drinking well past the point of drunkenness.

144.   This masking effect leads to sickness and alcohol poisoning, and even death.

145.   While caffeine masks the effects of alcohol, caffeine does not change the level of blood alcohol content, therefore it does nothing to reduce the deleterious effects associated with drinking alcohol.

146.   A study conducted at the University of Florida in Gainesville, Florida confirmed these allegations.

147.   In the University of Florida study, researchers observed that individuals consuming alcohol with energy drinks at a bar were three times as likely as individuals drinking just alcohol without an energy drink to leave the bar intoxicated.

148.   The researchers also found that those individuals consuming alcohol with energy drinks were four times as likely as individuals drinking just alcohol without an energy drink to drive a vehicle home.

149.   The study revealed that the average time spent drinking increased from 2.9 hours to 3.9 hours for those individuals consuming energy drinks with alcohol.

150.   The study revealed that the average number of drinks increased from 6.2 to 9.0 for those individuals consuming energy drinks with alcohol.

-19-

mar. 21. 2011 11:20AM    DARCY JOHNSON DAY                No. 8705   P. 27

151.   The study revealed that the average Blood Alcohol Content ("BAC") increased from 0.081 to 0.109 for those individuals consuming energy drinks with alcohol.

152.   Another study was conducted at Wake Forest University where researchers found that students who combined caffeine and alcohol were more likely to suffer alcohol-related injuries than those drinking alcohol without caffeine.

### Phusion's Failure to Warn and Product Defects

153.   Four Loko's success is due in large part to its significant popularity with underage individuals and college-aged students (the "Target Market").

154.   Four Loko's designs, as shown below, contain vibrant colors and are often mistaken for being a non-alcoholic energy drink:



155.   Four Loko's design is intended to appeal to the Target Market.

156.   The use of caffeine, guarana and taurine, all found in energy drinks, was a deliberate effort to manufacture and market the product as close to an energy drink as possible to mislead consumers.

157.   Phusion's change in marketing practices subsequent to pulling Original Four Loko from the market reveals an attempt to distance the company from its previous, more overt strategy to attract the Target Market.

-20-

158.   Founder Hunter proclaimed in November 2010: "Our drink isn't an energy drink – it's a caffeinated alcoholic beverage . . . [i]t's important that we frame it that way because that's the category it's in, and I stress that because some of the scrutiny is about misrepresentations of our brand. We've never called it an energy drink."

159.   However, in a 2006 distributor promotion, Founder Hunter claimed that Four was "the ideal drink for social, young adults looking for a great-tasting energy boost."

160.   Founder Hunter also referred to Four as the "original body buzz beverage."

161.   An older version of the Phusion website also listed the company profile as involving "three college friends from The Ohio State University [that] noticed the growing popularity of mixing alcoholic and energy drinks, like Red Bull and vodka, and decided to create a beverage company of their own."

162.   A previous Facebook page was dedicated to Four Loko that was created by interns from Phusion.

163.   Prior to removing Original Four Loko from the market, Phusion had a page on their official www.drinkfour.com website that encouraged submissions from users to "show us your happy-face" by uploading photos of themselves with Phusion beverages.

164.   Albums were created on the website that included college parties, and games like "Four Play."

165.   According to the FDA "[r]eports in the scientific literature have raised concerns regarding the formulation and packaging of pre-mixed products containing added caffeine and alcohol. For example, these products, presented as fruity soft drinks in colorful single-serving packages, seemingly target the young adult user. Furthermore, the marketing of

the caffeinated versions of this class of alcoholic beverage appears to be specifically directed to young adults."

166.   In July 2010, Senator Charles E. Schumer of New York asked the Federal Trade Commission ("FTC") to investigate whether the Four Loko packaging was "explicitly designed to attract under-age drinkers."

167.   Senator Schumer also noted that Four Loko is "stocked next to other energy drinks, creating further confusion."

168.   In an effort to continue reaping large financial gains from the sale of Four Loko, Phusion has omitted from its advertising and promoting of Four Loko these harmful effects.

169.   In an effort to continue reaping large financial gains from the sale of Four Loko, Phusion purposely directed its marketing efforts at the Target Market.

170.   Indeed, the packaging of the Original Four Loko made no reference to the beverage causing heart conditions, or other serious illness.

171.   Phusion ignored the medical evidence showing that caffeinated alcoholic beverages were dangerous, instead seizing an opportunity to increase market share after larger producers like Anheuser-Busch InBev NV and MillerCoors LLC removed caffeine from their competing products in December 2008.

172.   Phusion was aware that the presence of stimulants increased the appeal to underage drinkers and college students.

173.   Phusion was aware that its revenues and profits were significantly increased by sales to, and consumption by, underage drinkers and college students.

-22-

174.   Phusion purposely failed to disclose the dangers of the product, and purposely targeted its marketing and packaging, to underage individuals and college students in an effort to generate increased revenues and profits.

### Plaintiff Consumes Four Loko and Suffers Injuries

175.   Prior to the medical issues that are the subject of this Complaint, Plaintiff was a healthy 22-year old.

176.   Prior to the medical issues that are the subject of this Complaint, Plaintiff had no known heart damage.

177.   On October 3, 2010, Plaintiff and three friends arrived in Atlantic City, New Jersey to attend a concert.

178.   That same day, Plaintiff purchased three cans of Original Four Loko from a liquor store in Atlantic City, New Jersey.

-23-

179.    The following image of the labeling of Four Loko is similar in all material respects to the Original Four Loko product purchased by Plaintiff:



180.    Plaintiff viewed the above labeling at the time he purchased the cans of Original Four Loko.

181.    The above labeling was material to Plaintiff's decision to purchase and drink Original Four Loko.

182.    Nothing in the advertising, labeling, packaging, marketing, promotion, and selling of Original Four Loko gave Plaintiff any warning of the particular dangers of drinking a caffeinated alcoholic beverage.

183.    At the time, Plaintiff was unaware of the dangers associated with caffeinated alcoholic beverages.

184.    At the time, an ordinary consumer with ordinary knowledge would not have been aware of the dangers associated with caffeinated alcoholic beverages.

-24-

185. Plaintiff was misled by Phusion into purchasing and paying for a dangerous product that was not what it was represented to be.

186. That evening, Plaintiff consumed two and a half cans of Original Four Loko.

187. Plaintiff consumed the first can at approximately 4:00pm., the second can at approximately 7:00pm or 8:00pm, and the half of a third can later that evening.

188. Plaintiff did not misuse the product, nor did he alter the product in any way.

189. Plaintiff consumed only one additional alcoholic beverage that evening – a mixed drink containing vodka and Sprite around 5:00pm.

190. Sprite does not contain caffeine.

191. After going to sleep following the concert, Plaintiff awoke a few hours later.

192. When Plaintiff awoke, he felt his heart racing and had trouble breathing.

193. Shortly after waking up, Plaintiff blacked out.

194. After falling out of his bed, Plaintiff's friends called 911.

195. Paramedics were summoned to the hotel, and brought Plaintiff to the Atlantic City Medical Center ("ACMC").

196. Since Plaintiff's discharge from ACMC, Plaintiff has been under continuous care of a cardiologist for damage to his heart and will be for the foreseeable future.

197. Plaintiff's heart condition is a direct result of consuming Original Four Loko on October 3, 2010.

198. Plaintiff was misled by Phusion into purchasing and paying for a product that was not safe to consume.

DARCY JOHNSON DAY                     No. 8705   P. 33

199.   Had Plaintiff known the harmful effects of consuming Original Four Loko, he would not have purchased it and would not have consumed it.

200.   Phusion has deceptively misrepresented and/or omitted the true nature of its Original Four Loko alcoholic beverage and failed to warn consumers of the dangerousness of its product.

201.   Phusion deceitfully packaged its product to appeal to inexperienced and/or underage drinkers, who were either trying to become rapidly intoxicated, or were unaware of the potency of Original Four Loko.

202.   Phusion failed to warn and educate purchasers that the contents of Original Four Loko contained the alcohol content equivalent of approximately six beers and the caffeine equivalent of two energy drinks.

203.   As a result of consuming Four Loko, Plaintiff has suffered damages in the form of pain and suffering, disability, injury to his heart, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, and loss of ability to earn money.

## COUNT I: FAILURE TO WARN UNDER N.J.S.A. 2A:58C-1 ET SEQ.

204.   Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

205.   Defendants manufactured and sold Original Four Loko which contained a latent danger inherent in its beverage attributable to the non-traditional stimulants combined with alcohol.

206.   As such, Original Four Loko is inherently dangerous, unreasonably dangerous, and/or has dangerous propensities.

-26-

207.   At all times material hereto, Defendants knew of the inherently dangerous, unreasonably dangerous, and/or dangerous propensities of Original Four Loko.

208.   Pre-mixing the stimulants caffeine and guarana and other non-traditional substances with alcohol is uniquely dangerous.

209.   The foreseeable risks of harm posed by Original Four Loko could have been reduced or avoided by a reasonable instruction or warning.

210.   The omission of a reasonable instruction or warning rendered Original Four Loko not reasonably safe and the hazards associated with the product were not well known to consumers.

211.   As such, because of the inherently dangerous propensities of Original Four Loko, Defendants had a duty to warn.

212.   Defendants breached their duty to the Plaintiff by:

   a)   Negligently failing to warn Plaintiff of the dangerous propensities of Original Four Loko.

   b)   Knowingly failing to warn consumers, including Plaintiff, of the dangers of Original Four Loko.

213.   In knowingly failing to warn consumers, including Plaintiff, of the dangers of Original Four Loko, Defendants contributed substantially to causing Plaintiff's heart condition and showed a reckless and/or wanton and willful disregard for human life and/or for the safety of persons exposed to the effects of such conduct.

214.   By failing to warn, and as a direct and proximate result, Plaintiff now has a heart condition as a result of consuming Original Four Loko.

215.   As a direct and proximate result of Defendants' failure to warn, Plaintiff suffered bodily injury, resulting pain and suffering, disability, injury to his heart, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of

-27-

earnings, and loss of ability to earn money. All such damages and losses are either permanent or continuing in nature and the Plaintiff will suffer losses indefinitely into the future.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants for the following:

a) compensatory damages;

b) punitive damages

c) interest;

d) attorneys' fees and costs; and

e) such other relief the Court deems equitable and fair.

## COUNT II: MANUFACTURING DEFECT UNDER N.J.S.A. 2A:58C-1 *ET SEQ.*

216. Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

217. At all times material hereto, Defendants were engaged in the business of designing, manufacturing, testing, inspecting, promoting, advertising, importing and/or selling and distributing the Original Four Loko beverage to the public.

218. The Original Four Loko beverage was in a defective condition, unreasonably dangerous to users of the product at the time it was designed, manufactured, sold, distributed and placed in the stream of commerce by Defendants.

219. The nature of the defective conditions included, but were not limited to, the following:

a) The combination of the stimulants caffeine and guarana and other non-traditional substances with alcohol is uniquely dangerous.

b) That consuming alcohol and caffeine together allows one to drink more alcohol without feeling as intoxicated as would otherwise be the case as the combination masks the feeling of intoxication.

-28-

c)    That consuming alcohol and caffeine together reduces the perception of alcohol impairment, makes the person engage in drinking for a longer period of time, causes the person to underestimate his/her intoxication level, and/or reduces the objective self-measure of impairment, which increases the potential for alcohol poisoning, intoxication, physical injury, and driving while intoxicated.

d)    That Original Four Loko contained a very high quantity of both alcohol and caffeine well over and above similar type beverages available in the industry.

220.   The defects described above directly and proximately caused the incident and injuries sustained by Plaintiff in that they directly and in natural and continuous sequence produced or contributed substantially to his injuries.

221.   For the reasons set forth above, the Original Four Loko beverage was unreasonably dangerous to foreseeable users, including Plaintiff.

222.   As a direct and proximate result of the defective condition of the Original Four Loko beverage, Plaintiff suffered bodily injury, resulting pain and suffering, disability, injury to his heart, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, and loss of ability to earn money. All such damages and losses are either permanent or continuing in nature and the Plaintiff will suffer losses indefinitely into the future.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants for the following:

a)    compensatory damages;

b)    punitive damages;

c)    interest;

d)    attorneys' fees and costs; and

e)    such other relief the Court deems equitable and fair.

-29-

## COUNT III: DESIGN DEFECT UNDER N.J.S.A. 2A:58C-1 *ET SEQ.*

223.    Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

224.    The Original Four Loko beverage contained caffeine, along with guarana and taurine in combination with alcohol.

225.    Defendants manufactured, promoted, advertised, imported, sold, distributed, and/or placed into the stream of commerce the Original Four Loko beverage.

226.    Mixing alcohol, caffeine, guarana, and taurine, is inherently dangerous, and constitutes a design defect because the stimulants mask the intoxicating effects of the alcohol.

227.    Mixing alcohol, caffeine, guarana, and taurine is inherently dangerous, and constitutes a design defect because the combination can lead to excess consumption of alcohol due to the delayed feeling of intoxication which leads an individual to seek additional alcohol to obtain the same sensations as those found in previous encounters.

228.    Selling Original Four Loko in a 23.5 ounce can with an alcohol by volume level in excess of other similar products in the market constitutes a design defect because the actual alcohol and caffeine levels in one can, and the physiological impact of consuming the same, are not well known to consumers.

229.    The foreseeable risk of harm posed by Original Four Loko could have been reduced or avoided by the adoption of a reasonable alternative design such as the omission of caffeine and the other stimulants, manufacturing and selling the product in a smaller can, and manufacturing or selling it with less alcohol by volume.

230.    Defendants knowingly failed to correct this design defect that contributed substantially to causing Plaintiff's heart condition.

-30-

231.   As a direct and proximate result of the defective condition of the Original Four Loko beverage, Plaintiff suffered bodily injury, resulting pain and suffering, disability, injury to his heart, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, and loss of ability to earn money. All such damages and losses are either permanent or continuing in nature and the Plaintiff will suffer losses indefinitely into the future.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants for the following:

    a)     compensatory damages;

    b)     punitive damages;

    c)     interest;

    d)     attorneys' fees and costs; and

    e)     such other relief the Court deems equitable and fair.

## COUNT IV: FICTITIOUS DEFENDANTS

232.   Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

233.   Plaintiff alleges that an insufficient amount of time has passed within which to determine the identity of any other individuals or business entities that may be responsible for the causation of the injuries to Plaintiff.

234.   For the purposes of the within Complaint, said individuals and/or business entities have been nominated as John Does 1-10.

235.   Plaintiff, pursuant to the Rules of the Court for the State of New Jersey, reserves the right to amend the within Complaint to add additional Defendants when and if the identity of said individuals and/or business entities becomes known.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants for the following:

        a)    compensatory damages;

        b)    punitive damages;

        c)    interest;

        d)    attorneys' fees and costs; and

        e)    such other relief the Court deems equitable and fair.

## COUNT V: RESPONDEAT SUPERIOR

236.    Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

237.    At all times relevant hereto, Defendants John Does 1-10 were employees, agents, and/or servants of Defendants.

238.    At all times relevant hereto, John Does 1-10 were acting within the scope of their employment and/or agent capacity.

239.    Defendants failed to properly train, supervise, and/or otherwise oversee Defendants John Does 1-10 and/or other employees, agents and/or servants of these entities.

240.    Defendants are responsible and/or vicariously liable for the negligence, actions and/or inactions of their agents, employees and/or servants based on a theory of *respondeat superior*.

241.    As a direct and proximate cause of the actions and/or inaction of Defendants, as set forth in prior paragraphs, Plaintiff sustained damages as set forth above.

-32-

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants

for the following:

       a)    compensatory damages;

       b)    punitive damages;

       c)    interest;

       d)    attorneys' fees and costs; and

       e)    such other relief the Court deems equitable and fair.

## COUNT VI:  JOINT & SEVERAL LIABILITY

242.   Plaintiff incorporates by reference the preceding paragraphs of the

Complaint as if fully set forth herein.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants,

jointly, severally and/or in the alternative, for the following:

       a)    compensatory damages;

       b)    punitive damages;

       c)    interest;

       d)    attorneys' fees and costs; and

       e)    such other relief the Court deems equitable and fair.

## REQUEST FOR PUNITIVE DAMAGES

243.   Plaintiff incorporates by reference the preceding paragraphs of the

Complaint as if fully set forth herein.

244.   At all times relevant herein, Defendants:

       a)    knew that Original Four Loko was dangerous;

       b)    knowingly concealed the dangers and health risks from Plaintiff,
           the FDA, and the public at large;

Mar. 21. 2011 11:22AM    DARCY JOHNSON DAY                    No. 8705    P. 42

## JURY DEMAND

Plaintiff demands a jury trial of all issues in this action.

D'ARCY JOHNSON DAY, P.C.


BY: _____
Andrew J. D'Arcy, Esq.
3120 Fire Rd., Suite 100
Egg Harbor Twp NJ 08234
(609) 641-6200
Attorneys for Plaintiff


Dated: March 16, 2011

## CERTIFICATION PURSUANT TO RULE 4:5-1

I hereby certify that, to the best of my knowledge, the within matter in
controversy is not the subject of any other action pending in any court, nor of any pending
arbitration or administrative proceeding. I further certify that I know of no non-party who should
be joined in this action pursuant to R. 4:28 or who is subject to joinder pursuant to R. 4:29-1(b).


D'ARCY JOHNSON DAY, P.C.


BY: _____
Andrew J. D'Arcy, Esq.
3120 Fire Rd., Suite 100
Egg Harbor Twp NJ 08234
(609) 641-6200
Attorneys for Plaintiff


Dated: March 16, 2011


-35-

MAY. 21. 2011 11:17AM   DARCY JOHNSON DAY                                No. 8705   P. 6

**Appendix XII-B1**

| | | | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|---|---|

# CIVIL CASE INFORMATION STATEMENT (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed

**PAYMENT TYPE:** ☐ CK ☐ CG ☐ CA
**CHG/CK NO.**
**AMOUNT:**
**OVERPAYMENT:**
**BATCH NUMBER:**

| ATTORNEY / PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Andrew J. D'Arcy | (609) 641-8200 | Atlantic |

**FIRM NAME** (if applicable)
D'ARCY JOHNSON DAY, P.C.

**DOCKET NUMBER** (when available)
ATL L 2267-11

**OFFICE ADDRESS**
3120 Fire Road; Suite 120
Egg Harbor Township, NJ 08234

**DOCUMENT TYPE**
Complaint

**JURY DEMAND** ☒ YES ☐ NO

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| Michael A. Mustica, Plaintiff | Mustica v. Fhusion Projects, et al. |

**CASE TYPE NUMBER** (See reverse side for listing)
608

**IS THIS A PROFESSIONAL MALPRACTICE CASE?** ☐ YES ☒ NO
IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A-27 AND APPLICABLE CASE LAW
REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT.

**RELATED CASES PENDING?**
☐ YES ☒ NO

**IF YES, LIST DOCKET NUMBERS**

**DO YOU ANTICIPATE ADDING ANY PARTIES**
(arising out of same transaction or occurrence)?
☐ YES ☒ NO

**NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY** (if known)
☐ NONE
☐ UNKNOWN

THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.

**CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION**

**DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?**
☐ Yes ☒ No

**IF YES, IS THAT RELATIONSHIP:**
☐ EMPLOYER/EMPLOYEE ☐ FRIEND/NEIGHBOR ☐ OTHER (explain)
☐ FAMILIAL ☐ BUSINESS

**DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?** ☐ YES ☐ NO

**USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION**
Products liability matter.

**DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?**
☐ YES ☒ No

**IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION**

**WILL AN INTERPRETER BE NEEDED?**
☐ YES ☒ No

**IF YES, FOR WHAT LANGUAGE?**

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

**ATTORNEY SIGNATURE:**

Effective 01/03/2011, CN 10517-English                                    page 1 of 2

Mar. 21. 2011 11:18AM   DARCY JOHNSON DAY                                    No. 8705   P. 7

Side 2



# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule 4:5-1*

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I - 150 days' discovery**
151   NAME CHANGE
175   FORFEITURE
302   TENANCY
399   REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
502   BOOK ACCOUNT (debt collection matters only)
505   OTHER INSURANCE CLAIM (including declaratory judgment actions)
506   PIP COVERAGE
510   UM or UIM CLAIM (coverage issues only)
511   ACTION ON NEGOTIABLE INSTRUMENT
512   LEMON LAW
801   SUMMARY ACTION
802   OPEN PUBLIC RECORDS ACT (summary action)
999   OTHER (briefly describe nature of action)

**Track II - 300 days' discovery**
305   CONSTRUCTION
509   EMPLOYMENT (other than CEPA or LAD)
599   CONTRACT/COMMERCIAL TRANSACTION
603N  AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
603Y  AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
605   PERSONAL INJURY
610   AUTO NEGLIGENCE – PROPERTY DAMAGE
621   UM or UIM CLAIM (includes bodily injury)
699   TORT – OTHER

**Track III - 450 days' discovery**
005   CIVIL RIGHTS
301   CONDEMNATION
602   ASSAULT AND BATTERY
604   MEDICAL MALPRACTICE
606   PRODUCT LIABILITY
607   PROFESSIONAL MALPRACTICE
608   TOXIC TORT
609   DEFAMATION
616   WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
617   INVERSE CONDEMNATION
618   LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV - Active Case Management by Individual Judge / 450 days' discovery**
156   ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
303   MT. LAUREL
508   COMPLEX COMMERCIAL
513   COMPLEX CONSTRUCTION
514   INSURANCE FRAUD
620   FALSE CLAIMS ACT
701   ACTIONS IN LIEU OF PREROGATIVE WRITS

**Centrally Managed Litigation (Track IV)**
280   ZELNORM
285   STRYKER TRIDENT HIP IMPLANTS
288   PRUDENTIAL TORT LITIGATION

290   POMPTON LAKES ENVIRONMENTAL LITIGATION
291   PELVIC MESH/GYNECARE
292   PELVIC MESH/BARD

**Mass Tort (Track IV)**
248   CIBA GEIGY
266   HORMONE REPLACEMENT THERAPY (HRT)
271   ACCUTANE
274   RISPERDAL/SEROQUEL/ZYPREXA
275   ORTHO EVRA
277   MAHWAH TOXIC DUMP SITE
278   ZOMETA/AREDIA
279   GADOLINIUM

281   BRISTOL-MYERS SQUIBB ENVIRONMENTAL
282   FOSAMAX
283   DIGITEK
284   NUVARING
286   LEVAQUIN
287   YAZ/YASMIN/OCELLA
601   ASBESTOS

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics.

**Please check off each applicable category**  ☐ Putative Class Action    ☐ Title 59

Effective 01/03/2011, CN 10517-English

page 2 of 2

# EXHIBIT B

## NATIONAL REGISTERED AGENTS, INC OF NJ

### SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM

To: MATT DORNAUER
SIDLEY AUSTIN
1 SOUTH DEARBORN STREET
CHICAGO, IL 60603

SOP Transmittal # NJ37072

(888) 617-4545 - Telephone
(609) 716-0820 - Fax

Entity Served: PHUSION PROJECTS, LLC (Domestic State: DELAWARE)

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc of NJ or its Affiliate in the State of NEW JERSEY on this 13 day of April, 2011. The following is a summary of the document(s) received:

1.  **Title of Action:** Michael A. Mustica vs. Phusion Projects, LLC d/b/a Drink Four Brewing Co., et als

2.  **Document(s) served:** Summons/Citation/Third Party Summons, Complaint/Petition/Third Party Complaint

3.  **Court of Jurisdiction/** Superior Court of New Jersey, Law Division, Atlantic County
    **Case & Docket Number:** ATL L 2267 11

4.  **Amount Claimed, if any:** N/A

5.  **Method of Service** (select one):
    $\underline{\mathsf{X}}$ Personally served by:   $\underline{\mathsf{X}}$ Process Server        __ Deputy Sheriff        __ U. S Marshall
    __ Delivered Via:           __ Certified Mail       __ Regular Mail         __ Facsimile
                                (Envelope enclosed)     (Envelope enclosed)
    __ Other (Explain):

6.  **Date and Time of Receipt:** 4/13/2011 1:46:07 PM EST (GMT -5)

7.  **Appearance/Answer Date:** 35 days

8.  **Received From:**          Andrew J. D'Arcy, Esq.        9.  **Federal Express Airbill #** 794647037163
    (Name, Address & Telephone Number) D'Arcy Johnson Day, P.C.
                                3120 Fire Road, Suite 100     10. **Call Made to:** VM - CHRISTOPHER HENNEFORTH
                                Egg Harbor Township, NJ 08234       (CFO
                                609-641-6200

11. **Special Comments:**

Authorized By LL

**NATIONAL REGISTERED AGENTS, INC OF NJ**          **Copies To:**

Transmitted by Leslie Lofton

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc of NJ for informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action.

ORIGINAL

**D'ARCY JOHNSON DAY, P.C.**
3120 Fire Road; Suite 100
Egg Harbor Township, New Jersey 08234
609/641-6200
**Attorneys for Plaintiff**

| | | |
|---|---|---|
| **MICHAEL A. MUSTICA,** | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION |
| Plaintiffs, | : | ATLANTIC COUNTY |
| | : | |
| v. | : | DOCKET NO. ATL L 2267 11 |
| | : | |
| **PHUSION PROJECTS, LLC d/b/a** | : | CIVIL ACTION |
| **DRINK FOUR BREWING CO., and** | : | SUMMONS |
| **JOHN DOES 1-10 (multiple, alternative** | : | |
| **And fictitious individuals and/or** | : | |
| **Business entities),** | : | |
| | : | |
| Defendants. | : | |

**The State of New Jersey, to the above named Defendant(s):**

**PHUSION PROJECTS, LLC d/b/a DRINK FOUR BREWING CO.**

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The Complaint attached to this Summons states the basis for this lawsuit. If you dispute this Complaint, your or your attorney must file a written Answer or Motion and Proof of Service with the Deputy Clerk of the Superior Court in the county listed above within 35 days from the date you receive this Summons, not counting the date you receive it.(The address of each deputy clerk of the Superior Court is provided.) If the Complaint is one in foreclosure, then you must file your written Answer or Motion and Proof of Service with the Clerk of the Superior Court, Hughes Justice Complex, CN 971, Trenton, New Jersey 08625. An $105.00 filing fee payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the Deputy Clerk of the Superior Court) must accompany your Answer or Motion when it is filed. You must also send a copy of your Answer or Motion to the plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written Answer or Motion (with fee and completed Case Information Statement) if you want the Court to hear your defense.

If you do not file and serve a written Answer or Motion within 35 days the Court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services Office in the County where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Dated:       3-21-2011

*Edward P. McGettigan*

Edward F. McGettigan, Clerk

Name of defendant to be served:      Phusion Projects, LLC d/b/a Drink Four Brewing Co.
Address for service:                 c/o National Registered Agents, Inc. of NJ
                                     100 Canal Pointe Blvd; Suite 212
                                     Princeton, New Jersey  08540

**ATLANTIC COUNTY**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
120 E Bacharach Blvd., 1st Floor
Atlantic City, NJ 08401
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY**
Deputy Clerk of the Superior Court
Case Processing Section
Room 119
Justice Center, 10 Main St.
Hackensack, NJ 07601-0769
LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609)261-1088

**CAMDEN COUNTY**
Deputy Clerk of the Superior Court
Civil Processing Office
1st Fl., Hall of Records
101 S. Fifth St.
Camden, NJ 08103
LAWYER REFERRAL
(609) 964-4520
LEGAL SERVICES
(609) 964-2010

**CAPE MAY COUNTY**
Deputy Clerk of the Superior Court
Central Processing Office
9 N. Main Street
Box DN-209
Cape May Court House, NJ 08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY**
Deputy Clerk of the Superior Court
Civil Case Management Office
Broad & Fayette Sts., P.O. Box 615
Bridgeton, NJ 08302
LAWYER REFERRAL
(609) 692-6207
LEGAL SERVICES
(609) 451-0003

**ESSEX COUNTY**
Deputy Clerk of the Superior Court
237 Hall of Records
465 Martin Luther King, Jr. Blvd.
Newark, NJ 07102
LAWYER REFERRAL
(201) 622-6207
LEGAL SERVICES
(201) 624-4500

**GLOUCESTER COUNTY**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street., P.O. Box 129
Woodbury, NJ 08096
LAWYER REFERRAL
(609) 848-4589
LEGAL SERVICES
(609) 848-5360

**HUDSON COUNTY :**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House - 1st Floor
583 Newark Ave.
Jersey City, NJ 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08862
LAWYER REFERRAL
(908) 735-2611
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY :**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad Street, P.O Box 8068
Trenton, NJ 08650
LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court
Administration Building
Third Floor
1 Kennedy Sq., P.O. Box 2633
New Brunswick, NJ 08903-2633
LAWYER REFERRAL
(908) 828-0053
LEGAL SERVICES
(908) 249-7600

**MONMOUTH COUNTY**
Deputy Clerk of the Superior Court
71 Monument Park
P.O. Box 1262
Court House, East Wing
Freehold, NJ 07728-1262
LAWYER REFERRAL
(908) 431-5544
LEGAL SERVICES
(908) 866-0020

**MORRIS COUNTY**
Deputy Clerk of the Superior Court
Civil Division
30 Schuyler Pl., P.O. Box 910
Morristown, NJ 07960-0910
LAWYER REFERRAL
(201) 267-5882
LEGAL SERVICES
(201) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
Court House, Room 119
118 Washington Street
Toms River, NJ 08754
LAWYER REFERRAL
(908) 240-3666
LEGAL SERVICES
(908) 341-2727

**PASSAIC COUNTY**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton St.
Paterson , NJ 07505
LAWYER REFERRAL
(201) 278-9223
LEGAL SERVICES
(201) 345-7171

**SALEM COUNTY**
Deputy Clerk of the Superior Court
92 Market St., P.O. Box 18
Salem, NJ 08079
LAWYER REFERRAL
(609)678-8363
LEGAL SERVICES
(609)451-0003

**SOMERSET COUNTY**
Deputy Clerk of the Superior Court
Civil Division Office
New Court House, 3rd Fl.
P.O. Box 3000
Somerville, NJ 08876
LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860
LAWYER REFERRAL
(201) 267-5882
LEGAL SERVICES
(201) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st. Fl., Court House
2 Broad Street
Elizabeth, NJ 07207-6073
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500
LAWYER REFERRAL
(201) 267-5882
LEGAL SERVICES
(908) 475-2010

# EXHIBIT C

MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
ATTORNEYS AT LAW

GERALD J. CORCORAN
ADMITTED IN
NEW JERSEY
CERTIFIED BY THE SUPREME COURT OF
NEW JERSEY AS A CIVIL TRIAL ATTORNEY

CORNERSTONE COMMERCE CENTER
1201 NEW ROAD, SUITE 100
LINWOOD, NJ 08221
609-601-3010
FAX 609-601-3011

DIRECT DIAL
609-601-3015

gcorcoran@mmwr.com

April 21, 2011

Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., 1st Floor
Atlantic City, NJ 08401

  **Re:** **Mustica v. Phusion Projects, LLC, et al.**
     <u>**Docket No.: L-2267-11**</u>

Dear Sir or Madam:

  Enclosed please find an original and one copy of a Notice of Filing Notice of Removal with attached documents that were filed in the District of New Jersey today.  Please file the original and return the copy stamped with the date of filing in the envelope enclosed for your convenience.  I understand that there is no filing fee for this Notice.

  Thank you for your courtesies.

         Very truly yours,

         Gerald J. Corcoran

Enclosures

cc:  Andrew J. D'Arcy, Esquire (*via email & first class mail*)

2710646v1

**MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP**
(A Limited Liability Partnership Formed in Pennsylvania)
Cornerstone Commerce Center
1201 New Road, Suite 100
Linwood, NJ  08221
(609) 601-3010
*ATTORNEYS FOR DEFENDANT PHUSION PROJECTS, LLC*

|  |  |
|---|---|
| MICHAEL A. MUSTICA, | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION |
| Plaintiff, | ATLANTIC COUNTY |
| | |
| v. | Docket No.: L-2267-11 |
| | |
| PHUSION PROJECTS, LLC d/b/a DRINK | |
| FOUR BREWING CO., and JOHN DOES 1- | CIVIL ACTION |
| 10 (multiple, alternative and fictitious | |
| individuals and/or business entities), | **NOTICE OF FILING** |
| | **NOTICE OF REMOVAL** |
| Defendants. | |

TO:    Clerk of the Superior Court
        Law Division, Atlantic County
        Civil Division, Direct Filing
        1201 Bacharach Blvd., 1st Floor
        Atlantic City, NJ 08401

**PLEASE TAKE NOTICE** that Defendant Phusion Projects, LLC d/b/a Drink Four

Brewing Co has removed the above-captioned case pursuant to the Notice of Removal filed in

the United States District Court of New Jersey on April 21, 2011.  (Exhibit A attached hereto).

2710648v1

I certify that the documents attached hereto are true and correct copies of the original removal documents that were filed in the Office of the Clerk for the United States District Court for the District of New Jersey and served along with this Notice on opposing counsel. Pursuant to 28 U.S.C. § 1446(d), "the State court shall proceed no further unless and until the case is remanded."

MONTGOMERY, MCCRACKEN, WALKER
& RHOADS, LLP
Attorneys for Defendant Phusion Projects, LLC

By: _____
Gerald J. Corcoran

Dated:  April 21, 2011

-2-

2710648v1

## CERTIFICATION OF SERVICE

I, Gerald J. Corcoran, hereby certify that on the date listed below I caused to be served

**Defendant's Notice of Filing Notice of Removal** on the following person by e-mail and first

class mail:

Andrew J. D'Arcy, Esquire
D'Arcy Johnson Day, P.C.
3120 Fire Road, Suite 100
Egg Harbor Township, NJ 08234

Gerald J. Corcoran

Dated:  April 21, 2011

-3-