**D'ARCY JOHNSON DAY, P.C.**
3120 Fire Rd., Suite 100
Egg Harbor Twp NJ 08234
(609) 641-6200
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| ESTATE OF MICHAEL A. MUSTICA by and through VINCENT MUSTICA and KATHLEEN E. MUSTICA, Administrators Ad Prosequendum and Proposed Administrators,<br><br>       Plaintiff,<br><br>v.<br><br>PHUSION PROJECTS, LLC d/b/a DRINK FOUR BREWING CO.,<br><br>       Defendant. | Judge Jerome B. Simandle<br>Magistrate Judge Karen M. Williams<br><br>Civil Action No. 1:11-cv-02298-JBS-KMW<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

The Estate of Michael A. Mustica by and through Vincent Mustica and Kathleen E. Mustica, as Administrators Ad Prosequendum and Proposed Administrators ("Plaintiff"), through its undersigned counsel, D'Arcy Johnson Day, P.C., asserts the following First Amended Complaint against Defendant Phusion Projects, LLC d/b/a Drink Four Brewing Co. ("Phusion").

### <u>INTRODUCTION</u>

1. Plaintiff brings this action against Phusion for Phusion's deceptive and reckless actions related to the production, marketing, and selling of its popular alcoholic beverage called Four Loko.

2. Phusion's actions caused an otherwise healthy 22-year old to suffer from a heart condition after consuming Four Loko, before ultimately resulting in Plaintiff Michael A. Mustica's death just over nine months later.

3.    Four Loko has been referred to as "blackout in a can" and "liquid cocaine" and is popular with underage individuals and college-aged students (collectively, the "Target Market") due to its potency, inexpensive cost, and vibrant packaging targeted at the younger demographic.

4.    Upon information and belief, before being pulled from the market under threat of action by the United States Food and Drug Administration ("FDA"), one standard single serving can of the caffeinated version of Four Loko ("Original Four Loko") in New Jersey contained 23.5 ounces of liquid, was comprised of 12 percent alcohol, and had as much caffeine as contained in two energy drinks.

5.    Upon information and belief, each single serving can purchased in New Jersey contained the alcohol content equivalent of approximately six beers.

6.    Because of the dangers associated with the beverage, Original Four Loko has been banned or restricted by at least ten states, and at least ten colleges and universities either ban the product or severely punish students that possess it.

7.    Upon information and belief, the danger of Four Loko is so severe that it has been linked to at least nine deaths other than Plaintiff Michael A. Mustica.

8.    The FDA has declared that caffeinated alcoholic beverages are "a public health concern."

9.    The FDA has warned Phusion:  "It is FDA's view that the caffeine content of your beverage could result in central nervous system effects if a consumer drank one or more containers of your product.  Therefore, FDA believes that the consumption of your product, 'Four Loko,' may result in adverse behavioral outcomes because the caffeine is likely to counteract some, but not all, of the adverse effects of alcohol."

10.     New York Senator Charles E. Schumer applauded the FDA warning as "the nail in the coffin of these dangerous and toxic drinks."

11.     Phusion, recognizing the danger its product posed, pulled the caffeinated version of Four Loko from the market and now markets a version without caffeine, guarana, and taurine.

12.     Indeed, Phusion's reckless actions regarding Four Loko are not its first experience with questionable products and marketing.

13.     In 2006, Phusion's original entry into the caffeinated alcoholic beverage market started with a product called "Four."

14.     Phusion initially marketed Four as containing "wormwood oil."

15.     Wormwood is the active ingredient in absinthe and is thought to have hallucinogenic effects.

16.     Phusion later removed wormwood oil from its products.

17.     Upon information and belief, after having to change its formula a second time, a black market remains for the caffeinated version of Four Loko – commanding many times the retail price.

18.     As a result of Phusion's failure to warn consumers about the harmful and potentially deadly effects of Four Loko's potent content, Plaintiff Michael A. Mustica consumed Four Loko, resulting in a heart condition and ultimately died as a result.

19.     Upon information and belief, Plaintiff Michael A. Mustica is one of many individuals around the country who have suffered injury and death as a result of Phusion's actions and inaction.

## **PARTIES**

20.     Michael A. Mustica was an individual who was a citizen of New Jersey and resided in Warren County, New Jersey.

21.     The Plaintiff Estate of Michael A. Mustica brings this action by and through Vincent Mustica and Kathleen E. Mustica, Administrators Ad Prosequendum and Proposed Administrators.

22.     Phusion is a corporation organized and existing under the laws of the state of Delaware with its principal place of business located at 1658 Milwaukee Avenue, Suite 424, Chicago, IL 60647.

23.     Phusion does business as "Drink Four Brewing Company".

24.     Phusion is the manufacturer, distributor, marketer, promoter, and seller of the Four Loko beverage.

25.     Phusion regularly conducts business in New Jersey and in this judicial district by advertising and, through the distributors and retailers, delivers and sells its product to consumers.

26.     Plaintiff alleges, on information and belief, that at all times relevant herein, Phusion and its employees, subsidiaries, affiliates, and other related entities, were the agents, servants and employees of each other, and at all times relevant herein, each was acting within the purpose and scope of that agency and employment.

27.     Plaintiff further alleges, on information and belief, that at all times relevant herein, the distributors and retailers who delivered and sold Original Four Loko, the alcoholic beverage at issue, also were Phusion's agents, servants and employees, and at all times herein, each was acting within the purpose and scope of that agency and employment.

28.     Whenever reference in this First Amended Complaint is made to any act or omission of the Phusion, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Phusion committed, knew of, performed, authorized, ratified and/or directed that act or omission on behalf of Phusion while actively engaged in the scope of their duties.

29.     All allegations herein are based on information and belief and/or are likely to have evidentiary support after reasonable opportunity for further investigation and discovery.

## JURISDICTION AND VENUE

30.     This action was originally filed on March 16, 2011 in the Superior Court of New Jersey, Law Division, Atlantic County.

31.     On April 21, 2011, Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

## FACTUAL BACKGROUND

### Phusion Overview

32.     Phusion was formed in 2005 by Chris Hunter, Jaisen Freeman, and Jeff Wright, three students at The Ohio State University.

33.     The three founders as of 2005 had little experience in producing beverages, alcoholic or otherwise.

34.     Upon information and belief, before committing their efforts to Phusion full time, Wright managed accounts for an industrial medical supply company, Freeman worked for a global bank firm, and Hunter had some experience working for a spirits maker.

35.     Upon information and belief, none of the three founders have any experience in the medical profession and knew or deliberately ignored the dangerous

consequences of combining caffeine, guarana, and taurine with alcohol or the synergistic effect of the combination of these four ingredients.

36.     Today, Phusion produces, markets, and sells through retailers alcoholic beverages called Four Loko, Four MaXed, and Earthquake.

37.     Earthquake is marketed as a "non-caffeinated High Gravity Lager" and is not believed to have ever contained caffeine.

38.     Four Loko is sold in 23.5-ounce cans with either 6 or 12 percent alcohol by volume ("ABV"), depending on state regulations.

39.     Four Loko was introduced to the market in August of 2008 and today comes in eight flavors: Orange, Fruit Punch, Lemonade, Cranberry Lemonade, Uva (grape), Watermelon, Blue Raspberry and Lemon Lime.

40.     Four MaXed is sold in 16-ounce cans and has 10 percent ABV.

41.     Four MaXed was introduced to the market in January of 2008 and comes in two flavors: Gold (citrus) and Grape.

42.     The "four" in Four Loko and Four MaXed refers to the original formula's four primary ingredients:  alcohol, caffeine, taurine, and guarana.

43.     The three founders came up with the idea for a pre-mixed caffeinated alcoholic beverage after noticing that students were mixing alcohol and caffeine in bars.

44.     The combination of alcohol and energy drinks is very popular among youth and are regularly consumed by 31% of 12 to 17-year-olds and 34% of 18 to 24-year-olds according to a Fact Sheet published by the Centers for Disease Control and Prevention ("CDC").

45.     The CDC also reports that two leading brands of caffeinated alcoholic beverages experienced a 67-fold increase in sales between 2002 and 2008.

46.     Phusion has experienced tremendous financial growth in the past two years.

47.     It is estimated that Four Loko's top three flavors have sold an aggregate $97 million or more.

48.     Upon information and belief, the sales for Four Loko's top three flavors make them the ranked 3, 5, and 18 stocked products in the "progressive adult beverage" category according to Information Resources Inc.

49.     Upon information and belief, Phusion's sales have tripled in approximately the past year.

50.     Upon information and belief, Phusion is the fasting-growing beer and malt beverage company in the United States.

### Phusion's First Product, Promotional Tour, and Formula Change

51.     Before problems developed with the Four Loko product that is the subject of this Complaint, Phusion had previously made an attempt to enter the caffeinated alcoholic beverage market in 2006 with a product called Four.

52.     Phusion's early practices reveal deception and recklessness that was the precursor to Phusion's actions related to Four Loko.

53.     Phusion's first sales of Four took place in January 2006.

54.     While Four was similar to the original versions of Four Loko and Four MaXed in the respect that it was a flavored caffeinated alcoholic beverage, there was an additional ingredient not found in Phusion's current products called wormwood oil.

55.     Wormwood is an active ingredient in the alcohol absinthe.

56.     Absinthe is a popular alcoholic drink that originated in Europe, and is still sold there today.

57.     Absinthe is derived from wormwood, and contains the chemical thujone, which is thought to cause hallucinogenic effects.

58.     Absinthe has been the subject of controversy in the United States.

59.     Until 2007, absinthe was banned in the United States.

60.     In 2007, the Alcohol and Tobacco Tax and Trade Bureau (TTB) clarified that food or beverages were permitted to be sold in the United States if they were thujone-free.

61.     Phusion marketed Four as containing wormwood oil, which is associated with absinthe and hallucinogenic effects, even though the product did not contain any thujone.

62.     The ingredient in Four was "wormwood oil," which is different than wormwood.

63.     The inclusion of "wormwood oil" was designed to attract the Target Market who would be drawn to an "exotic ingredient" with a reputation for causing hallucinogenic effects.

64.     Phusion was aware of the dangers surrounding caffeinated alcoholic beverages as early as 2006 during the time it was promoting Four.

65.     Between February and March 2006, Phusion launched a promotional road trip throughout Ohio and the Midwest to generate interest in the Four product.

66.     As part of its plan to reach the Target Market, Phusion picked the largest collegiate sporting event to officially debut Four.

67.     Phusion launched Four during the NCAA 2006 Final Four Weekend in Indianapolis, Indiana.

68.     Following the Final Four Weekend, the road trip and product launch continued through June 2006 throughout the Midwest.

69.     Phusion's product launch was aimed at college campuses in Ohio, Indiana, and Illinois.

70.     Phusion purposely targeted college campuses and their surrounding areas as part of Phusion's overall plan to attract the Target Market.

71.     Phusion hosted launch parties at local bars and liquor stores near college campuses which involved tastings of the Four beverage.

72.     In December 2007, Phusion nearly went out of business.

73.     Around this same time, Phusion abandoned its original product Four, and launched a reformulated product called Four MaXed in January 2008.

74.     The initial version of Four MaXed contained wormwood oil.

75.     At the time, Phusion's website for the product, www.drinkfour.com, trumpeted Four MaXed as "big enough to get the job done right."

76.     Founder Hunter admitted at the time that there could be confusion between its caffeinated alcoholic beverages and non-alcoholic energy drinks stating, "[s]ome people, I guess, call them energy drinks, and maybe that's where the confusion is created."

77.     At some point between Four MaXed's entry into the market in August 2008 and today, Phusion removed wormwood oil from the product.

**Phusion Successfully Reaches the Target Market with Four Loko**

78.     The subject of this First Amended Complaint, Four Loko, has existed in two forms.

79.     Before being pulled from the market in November 2010 by Phusion, the original version of Four Loko ("Original Four Loko") contained caffeine.

80.     Plaintiff Michael A. Mustica in this action consumed Original Four Loko.

81.     Subsequent to Phusion pulling Original Four Loko from the market, Phusion opted to reformulate the product so that Four Loko no longer contains caffeine, taurine and guarana.

82.     After being introduced to the market in August 2008, the Four Loko brand gained popularity around the United States, eventually becoming available in 47 states and in Europe.

83.     Four Loko is inexpensive compared to similar alcoholic products.

84.     A standard serving can of Four Loko typically sells for around $2.50 or $3.00.

85.     This low price point is appealing to the Target Market and others living on a tight budget.

86.     Four Loko contains and always has contained between 6 and 12 percent alcohol by volume depending on state regulations, and comes in flavors such as Orange, Fruit Punch, Lemonade, Cranberry Lemonade, Uva (grape), Watermelon, Blue Raspberry and Lemon Lime.

87.     These flavors appeal to underage drinkers and college students because they taste more like a soft drink than an alcoholic beverage.

88.     Four Loko, as sold in New Jersey, contains and always has contained 12 percent alcohol by volume.

89.     Standard beers usually contain between 4 and 5 percent alcohol by volume.

90.     Upon information and belief, Four Loko is sold and always has been sold in a 23.5-ounce can, which when consumed, can be as potent as drinking approximately six 12 ounce cans of standard beer.

91.     Original Four Loko contained at least 135 milligrams of caffeine in each single serving 23.5 ounce can.

92.     According to the Mayo Clinic, a 12-ounce soft drink contains approximately 35 milligrams of caffeine, and an 8.3 ounce energy drink contains approximately 76 milligrams of caffeine.

93.     Original Four Loko also contained guarana and taurine.

94.     Guarana contains high concentrations of caffeine and has been used as a stimulant and appetite suppressant.

95.     According to an article in Pediatrics, the official journal of the American Academy of Pediatrics, "[e]ach gram of guarana can contain 40 to 80 mg of caffeine, and it has a potentially longer half life because of interactions with other plant compounds. Manufacturers are not required to list the caffeine content from these ingredients.  Thus, the actual caffeine dose in a single serving may exceed that listed."

96.     The article, "Health Effects of Energy Drinks on Children, Adolescents, and Young Adults", reported that energy drinks containing ingredients such as guarana, taurine, and caffeine have been associated with serious adverse effects including tachycardia, cardiac dysrhythmias, seizures, heart failure and death.

97.     Persons with heart problems, high blood pressure, kidney disease, an overactive thyroid (hyperthyroidism) or an anxiety or nervous disorder have been discouraged from ingesting guarana.

98.     Taurine is an amino acid often added to energy drinks of which the effects of heavy or long-term use are largely unknown.

99.     While Phusion currently only produces and sells the reformulated Four Loko, there is a black-market for the remaining cases of Original Four Loko.

100.    For example, in January 2011, three individuals were arrested after trying to sell three cases of Four Loko for $335.

101.    Certain retailers still sell their remaining supplies of Original Four Loko.

**Phusion Ignores Repeated Warning Signs**

102.    The danger of caffeinated alcoholic beverages has been known for quite some time and Phusion was aware, or should have been aware, of the danger long before it pulled its caffeinated alcoholic beverages from the market.

103.    Upon information and belief, in April 2006, Phusion recommended not drinking more than four cans of Four per day.

104.    Phusion's recommendation that individuals not drink more than four cans of Four per day was an admission that Phusion understood the inherent danger of caffeinated alcoholic beverages.

105.    In August 2007, a task force of state attorneys general wrote a letter to the federal Alcohol and Tobacco Tax and Trade Bureau (TTB) expressing concerns about caffeinated alcoholic beverages.

106.    The letter warned that "[a]dding caffeine and other stimulants to alcohol may increase the risk to young consumers because those additives tend to reduce the perception of intoxication and make greater quantities of alcohol palatable."

107.    In 2008, a group of state attorneys general began investigating companies that sold caffeinated alcoholic beverages on the grounds that the companies might be engaging in deceptive marketing, and the drinks could pose health risks by masking feelings of intoxication.

108.    As a result, in December 2008, Anheuser-Busch InBev NV and MillerCoors LLC, agreed to remove caffeine from their caffeinated alcoholic beverages.

109.     Upon information and belief, subsequent to Anheuser-Busch InBev NV and MillerCoors LLC, leaving the caffeinated alcoholic beverage market, Phusion saw increases in revenues and profits from increased market share.

110.     In November 2009, the FDA notified certain makers of caffeinated alcoholic beverages, including Phusion, that the FDA was beginning to look into the safety of their beverages and requested information on the alleged safety of adding caffeine to their products.

111.     At the time, Phusion maintained that "[a]lcohol and caffeine have been consumed together safely by adults of legal drinking age for years."

112.     Founder Hunter has also claimed that "[c]affeine and alcohol being mixed is nothing new and novel."

113.     At no time did Phusion inform the FDA that pre-mixed caffeinated alcoholic beverages were unsafe.

### Four Loko Controversies and Incidents

114.     In 2010 and early 2011, amidst building popularity and revenues, a series of incidents took place around the country that called into question the safety of Original Four Loko.

115.     One of the first reported incidents involving the effects of Original Four Loko took place at Ramapo College of New Jersey ("Ramapo") in Mahwah, New Jersey in September 2010.

116.     At Ramapo, 17 students and 6 visitors required medical attention after a party where Original Four Loko was consumed.

117.     As a result of this incident, Ramapo banned the drink from its campus.

118.     One month later, in October 2010, nine underage students at Central Washington University ("CWU") in Ellensburg, Washington were hospitalized after drinking Original Four Loko.

119.     Other incidents involving Original Four Loko and resulting bans have taken place at various schools, colleges, and universities.  These include, but are not limited to, the following:

a)     At Rider University ("Rider") in Trenton, New Jersey, four students were hospitalized after drinking Four Loko.

b)     At St. Joseph's University in Philadelphia, Pennsylvania, a "handful" of students were sent to the hospital after drinking Four Loko.

c)     In New Jersey alone, Ramapo, Drew University, Rider, and Farleigh Dickson University have either banned or severely punish students caught with Four Loko.

d)     The State University of New Jersey, Rutgers University, has called on the federal government to ban caffeinated alcoholic beverages nationwide.

e)     Mahwah, New Jersey high school students faced complaints after being intoxicated from Four Loko.

f)     The University of Rhode Island, Mount St. Mary's University, Wentworth Institute of Technology, Boston University, and the University of Maryland have banned Four Loko from their campuses.

g)     Worcester State University in Worcester, Massachusetts stopped the sale of all energy drinks.

120.     Numerous incidents of hospitalization and several deaths have been reported as a result of individuals consuming Original Four Loko.  These allegations include, but are not limited to, the following:

a)     In August 2010, a Long Island, New York 18-year-old female died in Florida of cardiac arrest after drinking four cans of Four Loko on top of a diet pill she had taken earlier in the day.

b) On August 1, 2010, a Florida resident and his three sons were killed when an individual who had been drinking Four Loko struck their car.

c) On October 20, 2010, a 19-year old Pennsylvania man suffered a heart attack from drinking Four Loko.  After being admitted to Temple University Hospital, doctors described the man's symptoms as resembling an overdose of cocaine or speed.

d) On November 5, 2010, a 21-year old female in Maryland died after drinking two cans of Four Loko and crashing her vehicle into a telephone pole.  Her friends stated that after consuming Four Loko, "[s]he was not the same person," and "[s]he could not remember people's names.  She was passed out within 30 minutes of having the alcoholic beverage."

e) Florida's Department of Children and Families announced that it is investigating the misuse of Four Loko after seeing "about a dozen cases in recent months that in some way involved this particular beverage . . . [with] Investigators [] seeing the beverage as a precursor in domestic-violence cases, cases related to supervision, DUIs and even parents consuming the beverage with teens."

121. Original Four Loko has also been banned or restricted in certain states.

These include, but are not limited to, the following:

a) Utah:  as early as October 2010, Utah's Department of Alcoholic Beverage Control determined that Four Loko would not be allowed for sale in the state.

b) Pennsylvania:  on November 1, 2010, the Pennsylvania Liquor Control Board sent letters to all state liquor stores urging the distributors to discontinue the sale of the drink.

c) Michigan:  on November 3, 2010, the Michigan Liquor Control Commission passed a ban on sales of caffeinated alcoholic beverages.

d) Oklahoma:  on November 3, 2010, the Oklahoma Alcoholic Beverage Laws Enforcement Commission placed a moratorium on Four Loko and other pre-mixed caffeinated alcoholic beverages which allowed retailers to sell their remaining stock before an outright ban effective December 3, 2010.

e) Washington:  on November 10, 2010, the Washington State Liquor Control Board voted to ban the sale of alcoholic energy drinks which went into effect on November 18, 2010.

f)      Massachusetts:  on November 18, 2010, the Massachusetts Alcoholic Beverages Control Commission filed an emergency regulation prohibiting the sale of alcoholic beverages that contain caffeine as an added ingredient.

g)      New York:  using the threat of banning Four Loko, the New York State Liquor Authority reached an agreement with Phusion to stop the sale and distribution of Four Loko as of November 19, 2010.

h)      Oregon:  on November 20, 2010, the Oregon Liquor Commission held an emergency meeting and voted to ban Four Loko effective immediately.

i)      Kansas:  on November 22, 2010, the Kansas Alcoholic Beverage Control announced that it had banned and was recalling caffeinated alcoholic beverages.

122.    Certain retailers, including Wegmans and Tops Markets, pulled Original Four Loko from their shelves.

## **Phusion Pulls Four Loko From the Market**

123.    Facing mounting public criticism, Phusion sent a letter to college presidents on November 4, 2010, sharing information about its products and offering "financial support for alcohol education efforts on campus."

124.    Shortly thereafter, on November 14, 2010, following public criticism by then-New York Governor David Patterson, Phusion agreed to stop shipping Original Four Loko to New York State as of November 19, 2010.

125.    On November 16, 2010, under pressure from the FDA and state governments across the country, Phusion announced its plan to remove caffeine and other sources of stimulant from its caffeinated alcoholic beverages.

126.    Phusion released a statement stating that it planned to remove caffeine, guarana and taurine nationwide and that Phusion would only produce a non-caffeinated version of Four Loko.

127.     Phusion's three co-founders, Chris Hunter, Jeff Wright, and Jaisen Freeman stated:  "We are taking this step after trying – unsuccessfully – to navigate a difficult and politically-charged regulatory environment at both the state and federal levels."

**FDA Completes Review and Issues Warning Letter**

128.     On November 17, 2010, one day following Phusion's announcement to reformulate Four Loko, the FDA released the results of its scientific review into caffeinated alcoholic beverages.

129.     The FDA declared that "[t]hese beverages present a public health concern."

130.     The FDA stated that caffeine added to alcoholic beverages is an "unsafe food additive" and said that seizure of the products is possible under federal law.

131.     As part of the FDA's scientific review, the FDA stated that it "examined the published peer-reviewed literature on the co-consumption of caffeine and alcohol, consulted with experts in the fields of toxicology, neuropharmacology, emergency medicine, and epidemiology, and reviewed information provided by product manufacturers.  FDA also performed its own independent laboratory analysis of these products."

132.     The FDA went on to note that "FDA does not find support for the claim that the addition of caffeine to these alcoholic beverages is 'generally recognized as safe,' which is the legal standard . . . .  To the contrary, there is evidence that the combinations of caffeine and alcohol in these products pose a public health concern."

133.     The FDA further urged that the "peer-reviewed studies suggest that the consumption of beverages containing added caffeine and alcohol is associated with risky behaviors that may lead to hazardous and life-threatening situations."

134.     The FDA went on to warn Phusion:  "It is FDA's view that the caffeine content of your beverage could result in central nervous system effects if a consumer drank one or more containers of your product.  Therefore, FDA believes that the consumption of your product, 'Four Loko,' may result in adverse behavioral outcomes because the caffeine is likely to counteract some, but not all, of the adverse effects of alcohol."

135.     The FDA specifically cited various studies concerning the safety of caffeine in alcohol:

> FDA has the following specific concerns about the safety of caffeine when used in the presence of alcohol.
>
> • Reports in the scientific literature have described behavioral effects that may occur in young adults when energy drinks are consumed along with alcoholic beverages (O'Brien et al., 2008; Thombs et al., 2010; Miller, 2008).
>
> • Studies suggest that the combined ingestion of caffeine and alcohol may lead to hazardous and life-threatening situations because caffeine counteracts some, but not all, of alcohol's adverse effects.  In one study, a mixture of an energy drink and alcohol reduced subjects' subjective perception of intoxication but did not improve diminished motor coordination or slower visual reaction times using objective measures (Ferreira et al., 2006).  In a dual-task model, subjects co-administered caffeine and alcohol reported reduced perception of intoxication but no reduction of alcohol-induced impairment of task accuracy (Marczinski and Fillmore, 2006).
>
> • Because caffeine alters the perception of alcohol intoxication, the consumption of pre-mixed products containing added caffeine and alcohol may result in higher amounts of alcohol consumed per drinking occasion, a situation that is particularly dangerous for naive drinkers (Oteri et al., 2007).

## Medical Evidence

136.     The combination of caffeine and alcohol in Original Four Loko can cause serious medical conditions, and lead to increased consumption of alcohol.

137.     One of the physiological dangers is the effect of caffeine and alcohol on a user's heart.

138.     The stimulant effect of caffeine combined with the depressant effect of alcohol can cause cardiac related problems.

139.     In particular, caffeine acts to raise the heart rate and blood pressure and can lead to heart palpitations.

140.     Consumption of caffeine with alcohol further increases the risk of heart rhythm problems.

141.     This danger is enhanced as a result of caffeine counteracting the depressive effects of alcohol and keeping the individual more alert.

142.     The perceived level of increased alertness has been found by researchers at the Boston University School of Public Health and the Center for Alcohol and Addiction Studies at Brown University to have no effect on enhancing performance on a driving test or improving sustained attention or reaction times.

143.     The delayed feeling of drunkenness leads individuals to consume additional alcohol to obtain the same sensations as those found in previous encounters.

144.     Caffeine in effect tricks individuals into believing they can keep drinking well past the point of drunkenness.

145.     This masking effect leads to sickness and alcohol poisoning, and even death.

146.     While caffeine masks the effects of alcohol, caffeine does not change the level of blood alcohol content, therefore it does nothing to reduce the deleterious effects associated with drinking alcohol.

147.   A study conducted at the University of Florida in Gainesville, Florida confirmed these allegations.

148.   In the University of Florida study, researchers observed that individuals consuming alcohol with energy drinks at a bar were three times as likely as individuals drinking just alcohol without an energy drink to leave the bar intoxicated.

149.   The researchers also found that those individuals consuming alcohol with energy drinks were four times as likely as individuals drinking just alcohol without an energy drink to drive a vehicle home.

150.   The study revealed that the average time spent drinking increased from 2.9 hours to 3.9 hours for those individuals consuming energy drinks with alcohol.

151.   The study revealed that the average number of drinks increased from 6.2 to 9.0 for those individuals consuming energy drinks with alcohol.

152.   The study revealed that the average Blood Alcohol Content ("BAC") increased from 0.081 to 0.109 for those individuals consuming energy drinks with alcohol.

153.   Another study was conducted at Wake Forest University where researchers found that students who combined caffeine and alcohol were more likely to suffer alcohol-related injuries than those drinking alcohol without caffeine.

### Phusion's Failure to Warn and Product Defects

154.   Four Loko's success is due in large part to its significant popularity with underage individuals and college-aged students (the "Target Market").

155.   Four Loko's designs, as shown below, contain vibrant colors and are often mistaken for being a non-alcoholic energy drink:



156.    Four Loko's design is intended to appeal to the Target Market.

157.    The use of caffeine, guarana and taurine, all found in energy drinks, was a deliberate effort to manufacture and market the product as close to an energy drink as possible to mislead consumers.

158.    Phusion's change in marketing practices subsequent to pulling Original Four Loko from the market reveals an attempt to distance the company from its previous, more overt strategy to attract the Target Market.

159.    Founder Hunter proclaimed in November 2010: "Our drink isn't an energy drink – it's a caffeinated alcoholic beverage . . . [i]t's important that we frame it that way because that's the category it's in, and I stress that because some of the scrutiny is about misrepresentations of our brand.  We've never called it an energy drink."

160.    However, in a 2006 distributor promotion, Founder Hunter claimed that Four was "the ideal drink for social, young adults looking for a great-tasting energy boost."

161.    Founder Hunter also referred to Four as the "original body buzz beverage."

162.    An older version of the Phusion website also listed the company profile as involving "three college friends from The Ohio State University [that] noticed the growing

popularity of mixing alcoholic and energy drinks, like Red Bull and vodka, and decided to create a beverage company of their own."

163.    A previous Facebook page was dedicated to Four Loko that was created by interns from Phusion.

164.    Prior to removing Original Four Loko from the market, Phusion had a page on their official www.drinkfour.com website that encouraged submissions from users to "show us your happy-face" by uploading photos of themselves with Phusion beverages.

165.    Albums were created on the website that included college parties, and games like "Four Play."

166.    According to the FDA, "[r]eports in the scientific literature have raised concerns regarding the formulation and packaging of pre-mixed products containing added caffeine and alcohol.  For example, these products, presented as fruity soft drinks in colorful single-serving packages, seemingly target the young adult user.  Furthermore, the marketing of the caffeinated versions of this class of alcoholic beverage appears to be specifically directed to young adults."

167.    In July 2010, Senator Charles E. Schumer of New York asked the Federal Trade Commission ("FTC") to investigate whether the Four Loko packaging was "explicitly designed to attract under-age drinkers."

168.    Senator Schumer also noted that Four Loko is "stocked next to other energy drinks, creating further confusion."

169.    In an effort to continue reaping large financial gains from the sale of Four Loko, Phusion has omitted from its advertising and promoting of Four Loko these harmful effects.

-22-

170.    In an effort to continue reaping large financial gains from the sale of Four Loko, Phusion purposely directed its marketing efforts at the Target Market.

171.    Indeed, the packaging of the Original Four Loko made no reference to the beverage causing heart conditions, or other serious illness.

172.    Phusion ignored the medical evidence showing that caffeinated alcoholic beverages were dangerous, instead seizing an opportunity to increase market share after larger producers like Anheuser-Busch InBev NV and MillerCoors LLC removed caffeine from their competing products in December 2008.

173.    Phusion was aware that the presence of stimulants increased the appeal to underage drinkers and college students.

174.    Phusion was aware that its revenues and profits were significantly increased by sales to, and consumption by, underage drinkers and college students.

175.    Phusion purposely failed to disclose the dangers of the product, and purposely targeted its marketing and packaging, to underage individuals and college students in an effort to generate increased revenues and profits.

### Plaintiff Michael A. Mustica Consumes Four Loko, Suffers Injuries, and Ultimately Dies

176.    Prior to the medical issues and resulting death that are the subject of this First Amended Complaint, Plaintiff was a healthy 22-year old.

177.    Prior to the medical issues described in this First Amended Complaint, Plaintiff had no known heart damage.

178.    On October 3, 2010, Plaintiff and three friends arrived in Atlantic City, New Jersey to attend a concert.

179.    That same day, Plaintiff purchased three cans of Original Four Loko from a liquor store in Atlantic City, New Jersey.

180.    The following image of the labeling of Four Loko is similar in all material respects to the Original Four Loko product purchased by Plaintiff:



181.    Plaintiff viewed the above labeling at the time he purchased the cans of Original Four Loko.

182.    The above labeling was material to Plaintiff's decision to purchase and drink Original Four Loko.

183.    Nothing in the advertising, labeling, packaging, marketing, promotion, and selling of Original Four Loko gave Plaintiff any warning of the particular dangers of drinking a caffeinated alcoholic beverage.

184.    At the time, Plaintiff was unaware of the dangers associated with caffeinated alcoholic beverages.

185.    At the time, an ordinary consumer with ordinary knowledge would not have been aware of the dangers associated with caffeinated alcoholic beverages.

186.     Plaintiff was misled by Phusion into purchasing and paying for a dangerous product that was not what it was represented to be.

187.     That evening, Plaintiff consumed two and a half cans of Original Four Loko.

188.     Plaintiff consumed the first can at approximately 4:00pm., the second can at approximately 7:00pm or 8:00pm, and the half of a third can later that evening.

189.     Plaintiff did not misuse the product, nor did he alter the product in any way.

190.     Plaintiff consumed only one additional alcoholic beverage that evening – a mixed drink containing vodka and Sprite around 5:00pm.

191.     Sprite does not contain caffeine.

192.     After going to sleep following the concert, Plaintiff awoke a few hours later.

193.     When Plaintiff awoke, he felt his heart racing and had trouble breathing.

194.     Shortly after waking up, Plaintiff blacked out.

195.     After falling out of his bed, Plaintiff's friends called 911.

196.     Paramedics were summoned to the hotel, and brought Plaintiff to the Atlantic City Medical Center ("ACMC").

197.     Following Plaintiff's discharge from ACMC and until his death on July 16, 2011, Plaintiff was under the continuous care of a cardiologist for damage to his heart.

198.     Plaintiff's heart damage was a direct result of consuming Original Four Loko on October 3, 2010.

199.     Plaintiff's death on July 16, 2011, was a result of the heart damage sustained as a direct result of consuming Original Four Loko on October 3, 2010.

200.     Plaintiff was misled by Phusion into purchasing and paying for a product that was not safe to consume.

201.     Had Plaintiff known the harmful effects of consuming Original Four Loko, he would not have purchased it and would not have consumed it.

202.     Phusion has deceptively misrepresented and/or omitted the true nature of its Original Four Loko alcoholic beverage and failed to warn consumers of the dangerousness of its product.

203.     Phusion deceitfully packaged its product to appeal to inexperienced and/or underage drinkers, who were either trying to become rapidly intoxicated, or were unaware of the potency of Original Four Loko.

204.     Phusion failed to warn and educate purchasers that the contents of Original Four Loko contained the alcohol content equivalent of approximately six beers and the caffeine equivalent of two energy drinks.

205.     As a result of consuming Four Loko, Plaintiff Michael A. Mustica suffered damages in the form of pain and suffering, disability, injury to his heart, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, and eventually died as a result of the heart damage resulting in further damages to his immediate family.

## COUNT I:  FAILURE TO WARN UNDER N.J.S.A. 2A:58C-1 *ET SEQ.*

206.     Plaintiff incorporates by reference the preceding paragraphs of this First Amended Complaint as if fully set forth herein.

207.     Defendant manufactured and sold Original Four Loko which contained a latent danger inherent in its beverage attributable to the non-traditional stimulants combined with alcohol.

208.     As such, Original Four Loko is inherently dangerous, unreasonably dangerous, and/or has dangerous propensities.

209.     At all times material hereto, Defendant knew of the inherently dangerous, unreasonably dangerous, and/or dangerous propensities of Original Four Loko.

210.     Pre-mixing the stimulants caffeine and guarana and other non-traditional substances with alcohol is uniquely dangerous.

211.     The foreseeable risks of harm posed by Original Four Loko could have been reduced or avoided by a reasonable instruction or warning.

212.     The omission of a reasonable instruction or warning rendered Original Four Loko not reasonably safe and the hazards associated with the product were not well known to consumers.

213.     As such, because of the inherently dangerous propensities of Original Four Loko, Defendant had a duty to warn.

214.     Defendant breached its duty to Plaintiff Michael A. Mustica by:

a)     Negligently failing to warn Plaintiff of the dangerous propensities of Original Four Loko.

b)     Knowingly failing to warn consumers, including Plaintiff, of the dangers of Original Four Loko.

215.     In knowingly failing to warn consumers, including Plaintiff, of the dangers of Original Four Loko, Defendant contributed substantially to causing Plaintiff's heart condition and resulting death, and showed a reckless and/or wanton and willful disregard for human life and/or for the safety of persons exposed to the effects of such conduct.

216.     By failing to warn, and as a direct and proximate result, Plaintiff suffered heart damage which eventually led to Plaintiff's death as a result of consuming Original Four Loko.

217.     As a direct and proximate result of Defendant's failure to warn, Plaintiff suffered bodily injury, resulting pain and suffering, disability, injury to his heart, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, and eventually died as a result of the heart damage.

WHEREFORE, Plaintiff Estate of Michael A. Mustica by and through Vincent Mustica and Kathleen E. Mustica, Administrators Ad Prosequendum and Proposed Administrators, demands judgment in its favor and against Defendant for the following:

a)     compensatory damages;

b)     punitive damages;

c)     interest;

d)     attorneys' fees and costs; and

e)     such other relief the Court deems equitable and fair.

## COUNT II:  MANUFACTURING DEFECT UNDER N.J.S.A. 2A:58C-1 *ET SEQ.*

218.     Plaintiff incorporates by reference the preceding paragraphs of this First Amended Complaint as if fully set forth herein.

219.     At all times material hereto, Defendant was engaged in the business of designing, manufacturing, testing, inspecting, promoting, advertising, importing and/or selling and distributing the Original Four Loko beverage to the public.

220.     The Original Four Loko beverage was in a defective condition, unreasonably dangerous to users of the product at the time it was designed, manufactured, sold, distributed and placed in the stream of commerce by Defendant.

221.     The nature of the defective conditions included, but were not limited to, the following:

a)      The combination of the stimulants caffeine and guarana and other non-traditional substances with alcohol is uniquely dangerous.

b)      That consuming alcohol and caffeine together allows one to drink more alcohol without feeling as intoxicated as would otherwise be the case as the combination masks the feeling of intoxication.

c)      That consuming alcohol and caffeine together reduces the perception of alcohol impairment, makes the person engage in drinking for a longer period of time, causes the person to underestimate his/her intoxication level, and/or reduces the objective self-measure of impairment, which increases the potential for alcohol poisoning, intoxication, physical injury, and driving while intoxicated.

d)      That Original Four Loko contained a very high quantity of both alcohol and caffeine well over and above similar type beverages available in the industry.

222.    The defects described above directly and proximately caused the incident, injuries, and death sustained by Plaintiff in that they directly and in natural and continuous sequence produced or contributed substantially to his injuries.

223.    For the reasons set forth above, the Original Four Loko beverage was unreasonably dangerous to foreseeable users, including Plaintiff.

224.    As a direct and proximate result of the defective condition of the Original Four Loko beverage, Plaintiff suffered bodily injury, resulting pain and suffering, disability, injury to his heart, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, and eventually died as a result of the heart damage.

WHEREFORE, Plaintiff Estate of Michael A. Mustica by and through Vincent Mustica and Kathleen E. Mustica, Administrators Ad Prosequendum and Proposed Administrators, demands judgment in its favor and against Defendant for the following:

a)      compensatory damages;

-29-

b)      punitive damages;

c)      interest;

d)      attorneys' fees and costs; and

e)      such other relief the Court deems equitable and fair.

## COUNT III:  DESIGN DEFECT UNDER N.J.S.A. 2A:58C-1 *ET SEQ.*

225.    Plaintiff incorporates by reference the preceding paragraphs of this First Amended Complaint as if fully set forth herein.

226.    The Original Four Loko beverage contained caffeine, along with guarana and taurine in combination with alcohol.

227.    Defendant manufactured, promoted, advertised, imported, sold, distributed, and/or placed into the stream of commerce the Original Four Loko beverage.

228.    Mixing alcohol, caffeine, guarana, and taurine, is inherently dangerous, and constitutes a design defect because the stimulants mask the intoxicating effects of the alcohol.

229.    Mixing alcohol, caffeine, guarana, and taurine is inherently dangerous, and constitutes a design defect because the combination can lead to excess consumption of alcohol due to the delayed feeling of intoxication which leads an individual to seek additional alcohol to obtain the same sensations as those found in previous encounters.

230.    Selling Original Four Loko in a 23.5 ounce can with an alcohol by volume level in excess of other similar products in the market constitutes a design defect because the actual alcohol and caffeine levels in one can, and the physiological impact of consuming the same, are not well known to consumers.

231.    The foreseeable risk of harm posed by Original Four Loko could have been reduced or avoided by the adoption of a reasonable alternative design such as the omission

of caffeine and the other stimulants, manufacturing and selling the product in a smaller can, and manufacturing or selling it with less alcohol by volume.

232.     Defendant knowingly failed to correct this design defect that contributed substantially to causing Plaintiff's heart condition, and ultimately Plaintiff's death.

233.     As a direct and proximate result of the defective condition of the Original Four Loko beverage, Plaintiff suffered bodily injury, resulting pain and suffering, disability, injury to his heart, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, and eventually died as a result of the heart damage.

WHEREFORE, Plaintiff Estate of Michael A. Mustica by and through Vincent Mustica and Kathleen E. Mustica, Administrators Ad Prosequendum and Proposed Administrators, demands judgment in its favor and against Defendant for the following:

        a)     compensatory damages;

        b)     punitive damages;

        c)     interest;

        d)     attorneys' fees and costs; and

        e)     such other relief the Court deems equitable and fair.

## COUNT IV:  WRONGFUL DEATH

234.     Plaintiff incorporates by reference the preceding paragraphs of this First Amended Complaint as if fully set forth herein.

235.     On July 16, 2011, Plaintiff Michael A. Mustica passed away due in substantial part to the heart damage he sustained after consuming Original Four Loko on October 3, 2010.

236. Defendant's negligent actions as described in this First Amended Complaint were a direct and proximate cause of Plaintiff Michael A. Mustica's death and/or caused Plaintiff Michael A. Mustica to lose a substantial chance at avoiding death from a heart condition.

237. As a result of his death, Plaintiff suffered economic loss pursuant to the case of Green v. Bittner, 85 N.J. 1, 424 A.2d 210 (1980) and other damages as legally permissible.

WHEREFORE, Plaintiff Estate of Michael A. Mustica by and through Vincent Mustica and Kathleen E. Mustica, Administrators Ad Prosequendum and Proposed Administrators, demands judgment in its favor and against Defendant for the following:

a) compensatory damages;

b) punitive damages;

c) interest;

d) attorneys' fees and costs;

e) all damages permitted pursuant to the New Jersey Wrongful Death Act and the case of Green v. Bittner, 85 N.J. 1, 424 A.2d 210 (1980);and

f) such other relief the Court deems equitable and fair.

## COUNT V:  SURVIVAL ACTION

238. Plaintiff incorporates by reference the preceding paragraphs of this First Amended Complaint as if fully set forth herein.

239. As a direct and proximate cause of Defendant's above described negligence and acts, Plaintiff Michael A. Mustica was caused to endure substantial and prolonged pain and suffering, extreme mental anguish, and was subject to hospitalization and

various medical procedures during which time Plaintiff Michael A. Mustica continued to suffer and ultimately died.

240.    As a direct and proximate cause of Defendant's negligence and Defendant's acts and omissions described hereinabove, Plaintiff Michael A. Mustica accrued substantial hospital and medical expenses.

WHEREFORE, Plaintiff Estate of Michael A. Mustica by and through Vincent Mustica and Kathleen E. Mustica, Administrators Ad Prosequendum and Proposed Administrators, demands judgment in its favor and against Defendant for the following:

a)    compensatory damages;

b)    punitive damages;

c)    interest;

d)    attorneys' fees and costs;

e)    all damages permitted pursuant to the New Jersey Survival Statute; and

f)    such other relief the Court deems equitable and fair.

## REQUEST FOR PUNITIVE DAMAGES

241.    Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

242.    At all times relevant herein, Defendant:

a)    knew that Original Four Loko was dangerous;

b)    knowingly concealed the dangers and health risks from Plaintiff Michael A. Mustica, the FDA, and the public at large;

c)    with full knowledge of the health risks associated with Original Four Loko;

   d)  with such information being material and relevant to the harm in question; and

   e)  without adequate warnings of the same, manufactured, marketed, promoted, developed, sold and/or distributed Original Four Loko.

243. Defendant, by and through officers, directors, managing agents, authorized sales representatives, employees and/or other agents who engaged in malicious, fraudulent and oppressive conduct towards Plaintiff Michael A. Mustica and the public, acted with willful and wanton and/or conscious and reckless disregard for the safety of Plaintiff Michael A. Mustica and the general public.

244. As a direct and proximate result of one or more of these wrongful acts or omissions of Defendant, Plaintiff Michael A. Mustica suffered profound injuries that required medical treatment, substantial medical and hospital expenses, and ultimately resulted in Plaintiff Michael A. Mustica's death.

   WHEREFORE, Plaintiff demands judgment in its favor and against Defendant for the following:

   a)  compensatory damages;

   b)  punitive damages;

   c)  interest;

   d)  attorneys' fees and costs; and

e)      such other relief the Court deems equitable and fair.


Respectfully Submitted,

**D'ARCY JOHNSON DAY, P.C.**


BY: <u>s/ Andrew J. D'Arcy</u>
       Andrew J. D'Arcy, Esq.
       3120 Fire Rd., Suite 100
       Egg Harbor Twp NJ 08234
       (609) 641-6200
       Attorneys for Plaintiff

Dated:  November 30, 2011

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically via the

Court's ECF system in compliance with Local Civil Rule 5.2 on November 30, 2011, and served

upon the following via the same:

> Gerald J. Corcoran, Esquire
> Montgomery, McCracken, Walker & Rhoads, LLP
> Cornerstone Commerce Center
> 1201 New Road, Suite 100
> Linwood, NJ 08221

>> s/  Andrew J. D'Arcy
>> Andrew J. D'Arcy, Esquire